585 So.2d 1127 (1991)
Roger ALTMAN, Former Husband, Appellant,
v.
Linda ALTMAN, Former Wife, Appellee.
No. 91-144.
District Court of Appeal of Florida, First District.
September 16, 1991.
Daniel Harmon, III of Harmon & Sloan, P.A., Panama City, for appellant.
Paul G. Komarek of Daniel & Komarek, Panama City, for appellee.
PER CURIAM.
This appeal is from a final order granting rehearing and upholding an order clarifying a clause in a stipulation agreement which modified a final judgment of dissolution of marriage. We reverse and remand.
*1128 Roger and Linda Altman were divorced in 1978. The final judgment of dissolution adopted and incorporated a separation agreement whereby Roger agreed to provide health insurance for the couple's child and to pay for hospitalization expenses not adequately covered by insurance. In 1984 Linda asked Roger to pay for medical bills insurance would not pay. Roger responded that he had not agreed to pay all medical bills not covered by insurance. Linda eventually petitioned for modification.
On June 8, 1990, the trial court entered an order of modification adopting a stipulation agreement entered into by Roger and Linda. The stipulation provides in pertinent part that:
(1) The former husband shall supply the former wife the sum of $250.000 to be deposited in a special account, the purpose thereof being "to provide as necessary for the immediate charges and expenses of the minor child's health care," that is, "any ordinary physician office visits, dental office visits, prescription drug orders, or any other medical or dental services requiring payment in advance of the performance of such services shall be paid from this account... ."
(2) The former husband is to direct his insurance companies to provide explanation of benefit forms to him and the former wife, and "to pay directly to the Former Wife" benefits under the insurance policies. "Upon receipt of the explanation of benefits forms by the Former Husband, he shall, within fifteen (15) days, pay to the Former Wife, that portion previously directed by this Court that the insurance companies have not covered under their benefits." Additionally, it is specifically provided that, "Upon receipt of any claim check from any insurance agency for services provided to the minor child that required immediate payment from the maintenance account, the Former Wife shall deposit the full amount received into the maintenance account for reimbursement."
(3) The former husband agrees to provide the former wife with "all information regarding the insurance coverage available to the parties' minor child... ."
(4) The former husband is authorized to "deduct the $250.00 deposit from his last child support payment when the child no longer meets the legal requirements for his support."
(5) Paragraph five of the agreement deals with payment for the child's health care and states
The Former Husband shall be responsible for paying one hundred percent (100%) of any deductibles applicable to the insurance policy. Thereafter, the Former Husband shall be responsible for at least eighty percent (80%), or the current percentage rate of the insurance coverage, whichever is greater, of all hospitalizations, medical services, (both in-patient and out-patient), dental services, prescription drugs, over-the-counter drugs and appliances reasonably necessary for the child's health and welfare. Should any health care service rendered to the parties' minor child not be covered by insurance, the Former Husband shall be obligated to pay eighty percent (80%) of the uncovered expense, with the Former Wife being responsible for the remaining twenty percent (20%). Health care services or providers shall be termed in this Stipulation to include physicians, dentists, hospitals, clinics, and pharmacies.
On August 31, 1990, Linda filed an `emergency motion to compel and/or motion for clarification'. The motion averred that the child needed two out-patient surgical procedures to determine whether the child had cancer or leukemia. Insurance covered eighty percent of the expenses for the procedures; and Linda wanted Roger to pay a portion of the twenty percent not covered by insurance. She requested clarification of paragraph five of the stipulation agreement and an order requiring that Roger contribute his share of the upcoming medical expenses in advance.
A hearing was conducted, but neither Roger nor his counsel attended. The trial court entered an order on September 21, 1990, stating
The Former Wife was present with counsel and presented evidence; and, being *1129 otherwise fully advised in the premises, it is
ORDERED AND ADJUDGED THAT:
1. For Clarification of the Stipulation entered into between the parties and approved by this court on June 7, 1990, the Former Husband is responsible for the insurance company's deductible. The insurance company will pay what it is contractually bound to pay under the policy of insurance. The Former Husband shall then pay eighty percent (80%) of that portion not covered by the insurance proceeds and the Former Wife shall be responsible for the remaining twenty percent (20%) of that portion not covered by insurance proceeds. Should the expense not be covered by insurance, then the Former Husband is responsible for eighty percent (80%) of the entire amount of the expense and the Former Wife is responsible for the remaining twenty percent (20%).
... .
4. This order in no way alters the original Stipulation entered into between the parties and approved in the Order of Modification dated June 7, 1990, but is merely an interpretation of the Court's Order for the benefit and guidance of the parties.
Roger moved for rehearing on October 11, 1990, on the ground he did not receive notice of Linda's emergency motion. On December 12, 1990, the trial court granted rehearing and heard argument from counsel. The trial court found "that its prior order was for the purpose of interpretation of the parties' agreement, and did not alter any provisions thereof; and, therefore, should remain in full force and effect." Roger appeals.
Although styled as a stipulation, the agreement between the parties may be treated as a partial settlement agreement. See 3 Abrams, Florida Family Law, § 56.02(4) (1991) ("The considerations that are involved in negotiating, interpreting, modifying, and enforcing written settlement agreements are also applicable to [stipulations]."). Therefore, cases dealing with separation or settlement agreements are applicable in this case.
"A separation agreement entered into by the parties and ratified by the trial court is a contract, subject to interpretation like any other contract." Bingemann v. Bingemann, 551 So.2d 1228, 1231 (Fla. 1st DCA 1989). The language in paragraph five of the stipulation agreement is ambiguous; and, like any other contract, extrinsic evidence was admissible as to the intent of the parties regarding the latent ambiguity. Hunt v. First National Bank, 381 So.2d 1194 (Fla. 2d DCA 1980).
The ambiguity to be resolved appears in paragraph five in the sentences reading, "Thereafter, the Former Husband shall be responsible for at least eighty percent (80%), or the current percentage rate of the insurance coverage, whichever is greater, of all hospitalizations, medical services, (both in-patient and out-patient), dental services, prescription drugs, over-the-counter drugs and appliances reasonably necessary for the child's health and welfare. Should any health care service rendered to the parties' minor child not be covered by insurance, the Former Husband shall be obligated to pay eighty percent (80%) of the uncovered expense, with the Former Wife being responsible for the remaining twenty percent (20%)." The inherent ambiguity lies in what is meant by "should any health care service ... not be covered by insurance." Does this phrase mean that the 80:20 ratio specified in the sentence is applicable only in the event that the "health care service" is not covered at all by insurance, i.e., the entire expense must be paid by the parents, or does it not only include those claims but also medical expenses that are covered by insurance that pays only a percentage thereof, i.e., 80 percent?
The medical insurance being furnished by the husband pays approximately 80 percent of covered medical and health care services, and of the remaining 20 percent not paid by medical insurance, the former wife contends that the stipulation contemplates that the former husband is required to pay 80 percent, while she is required to pay 20 percent. Under her construction, the former husband would have to pay 96 percent of all health care expenses covered *1130 by insurance and only 80 percent of uncovered expenses. The former husband contends that his obligation is to ensure payment of 80 percent of the child's health care expenses, either through purchasing insurance to reimburse such expenses or through personal cash payments, and that the former wife is to pay the remaining 20 percent of the medical expense, whether or not such expenses are covered by insurance. Thus, he contends, so long as his insurance pays 80 percent, that reimbursement fully satisfies his obligation under the stipulation.
This ambiguity cannot be resolved from the four corners of the stipulation; it can only be resolved by taking extrinsic evidence on the parties' intent when making the stipulation. In the absence of such evidence, it is pure speculation to choose that the parties meant what the former wife contends or what the former husband contends. It may well be that the parties never actually had a meeting of the minds on the subject, for their respective constructions of the stipulation are substantially divergent and far apart in respect to the financial consequences.
We find in this case the trial court abused its discretion by not taking extrinsic evidence regarding the parties' intent. By clarifying and interpreting the stipulation, the trial court acknowledged the ambiguity. A trial court cannot and need not interpret the plain meaning of the language in a contract. See Vienneau v. Metropolitan Life Ins. Co., 548 So.2d 856 (Fla. 4th DCA 1989). Accordingly, we reverse.
Although the trial court in the case sub judice heard arguments of counsel on rehearing, it appears no evidence was presented. Since the trial court acknowledged the ambiguity, we remand for an evidentiary hearing on the issue of the intent of the parties.
REVERSED and REMANDED.
SHIVERS, WIGGINTON and ZEHMER, JJ., concur.