974 F.2d 1341
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re AIRWEST INTERNATIONAL, INC., dba Air Hawaii, Debtor.
Wyman W.C. LAI, Trustee for Airwest International, Inc., dba
Air Hawaii, Plaintiff-Appellee,
v.
INTERNATIONAL AIR LEASES INC., a Delaware Corporation;
World Airways, Inc., a Delaware Corporation,
Defendants-Appellants.
 No. 91-15685.
 Bankruptcy No. 86-00145.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 6, 1992.
Decided Sept. 9, 1992.
 
 MEMORANDUM*
 Before CYNTHIA HOLCOMB HALL, BRUNETTI and LEAVY, Circuit Judges.
 
 
 1
 International Air Leases, Inc. (IAL) appeals the district court's summary judgment in favor of the bankruptcy trustee for Airwest International, Inc. The issue is whether the district court was correct in holding that IAL must refund a security deposit to Airwest. We reverse and remand.
 
 
 2
 * IAL is in the business of leasing commercial aircraft. In October 1985, IAL leased two DC-10 aircraft to Airwest, which operated the new Air Hawaii airline. The lease included provisions for Airwest to exercise an option to purchase the two aircraft at any time during the term of the 60-month lease. Airwest paid a $1 million security deposit upon leasing the aircraft.
 
 
 3
 Four months later, in February 1986, Airwest failed to make required payments to IAL. IAL warned Airwest that unless it received the payments by February 18, 1986, IAL would repossess the aircraft. Airwest did not make the payments and World Airways repossessed the aircraft on behalf of IAL.
 
 
 4
 The next month, Airwest filed for Chapter 11 bankruptcy protection. Airwest asked the bankruptcy court to order IAL to return the aircraft, refund the security deposit, and pay $10 billion in punitive damages. The bankruptcy court denied Airwest's motion for a preliminary injunction, finding that IAL did not have to return the aircraft and that it was not liable for punitive damages. The bankruptcy court found that IAL had "properly terminated the leases" and that "when [Airwest] failed to pay the basic rent and the lease was terminated, the option agreement became void and, in effect, non-existent."
 
 
 5
 A few months later, the bankruptcy court denied both IAL's and Airwest's motions for summary judgment on the issue of damages and the return of the security deposit. The court ruled that "an accounting appears necessary and material questions of fact must be decided."
 
 
 6
 In a motion for summary judgment filed in 1990, Airwest asked for the return of the $1 million security deposit plus interest and attorney's fees. IAL filed a cross-motion for summary judgment. On its own motion, the district court removed the reference of the case to the bankruptcy court. After briefing and oral argument, the district court granted summary judgment for Airwest and ordered IAL to refund the $1 million security deposit plus interest, attorney's fees, and costs.
 
 
 7
 The district court found as a matter of law that the hourly charges specified in the lease were to be applied along with the basic rent to the purchase price under the option provision. Under that reading of the agreement, Airwest would have had to pay little or nothing to own the planes at the end of the lease. The district court found that such a consequence meant that the leases were actually security arrangements under Florida law. The court then calculated damages as if the leases were security arrangements and concluded that Airwest was entitled to a refund of the security deposit. The court denied a motion for reconsideration. IAL appeals the grant of summary judgment.
 
 II
 
 8
 We review summary judgments de novo "to determine whether, viewing the evidence in a light most favorable to the non-moving party, there are any genuine issues of material fact and whether the district court applied the relevant substantive law." Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). The parties agree that the interpretation of the contract is governed by Florida law.
 
 
 9
 IAL argues that the district court erred by interpreting the agreement as a matter of law without considering extrinsic evidence. We agree. Because the district court's interpretation, which may have been erroneous, led it to conclude that IAL owed Airwest a return of the security deposit, we must remand for further proceedings.
 
 
 10
 Before discussing the merits of this issue, we note that we are satisfied that IAL has preserved this issue for appeal. Before the district court issued summary judgment, IAL argued that it should consider extrinsic evidence in interpreting the agreement. This issue is therefore properly before us.
 
 
 11
 The agreements between Airwest and IAL for the lease of the two aircraft provide that Airwest was to make two types of payments each month: "basic rent" of $285,000 per airplane and "hourly charges" of $675 per airplane for each hour the planes were moving on the ground or in the air.
 
 
 12
 In a separate agreement executed at the same time as the lease, IAL granted Airwest an option to purchase the aircraft at any time during the term of the lease. The purchase price for each aircraft would be $19.5 million plus interest from the date of delivery. According to the option agreement, Airwest could apply "all rental payments" to the purchase price. The central dispute here is the meaning of "all rental payments."
 
 
 13
 Airwest argues that the term means the basic rent of $285,000 per month per aircraft plus the hourly charges. IAL contends the term excludes the hourly charges. The district court found upon its examination of the lease that "as a matter of law ... included in the rental payments, in addition to the basic rent, is the block rent of $675 per block hour."
 
 
 14
 Under Florida law, "[t]he construction of a written document ... presents a question of law for the court, if its language is clear and unambiguous." Vienneau v. Metropolitan Life Ins. Co., 548 So.2d 856, 859 (Fla.Dist.Ct.App.1989). ' "An 'ambiguous' word or phrase in a contract has been defined as 'susceptible of interpretation in opposite ways' or 'reasonably or fairly susceptible to different constructions.' " ' Id. at 859 n. 5 (citations omitted).
 
 
 15
 We find that the term "all rental payments" in the option agreement is ambiguous in the context of this contract. It could reasonably be interpreted to include or exclude the hourly charges. The language of the contract simply is not clear on this point.
 
 
 16
 In Altman v. Altman, 585 So.2d 1127 (Fla.Dist.Ct.App.1991), the trial court was faced with a stipulation with some unclear language. The appellate court found that "[t]his ambiguity cannot be resolved from the four corners of the stipulation; it can only be resolved by taking extrinsic evidence on the parties' intent when making the stipulation. In the absence of such evidence, it is pure speculation to choose" one side's interpretation over the other's. Id. at 1130.
 
 
 17
 "A cardinal rule is that where the language used in a contract is ambiguous or unclear, the court may consider extrinsic matters not to vary the terms of the contract, but to explain, clarify or elucidate the ambiguous language with reference to the subject matter of the contract, the circumstances surrounding its making, and the relation of the parties." Vienneau, 548 So.2d at 859.
 
 
 18
 The district judge declined to consider any extrinsic evidence and interpreted the contract as a matter of law. Because we find that the language at issue is ambiguous, this was an error. The district court should have considered extrinsic evidence pursuant to Florida law.
 
 
 19
 The district judge's interpretation of the ambiguous portion of the contract led him to conclude that Airwest could have purchased the airplanes for only a nominal consideration at the end of the lease term. This in turn led to his conclusion that the lease was actually a security arrangement and he calculated damages accordingly. The district court's failure to consider extrinsic evidence, therefore, could have led to an erroneous determination of damages. We must therefore reverse the grant of summary judgment and remand for further proceedings.
 
 
 20
 Because this error mandates reversal, we need not reach appellant's other claims of error.
 
 
 21
 REVERSED AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3