551 So.2d 1228 (1989)
Pamela W. BINGEMANN, Appellant,
v.
David A. BINGEMANN, Appellee.
No. 89-197.
District Court of Appeal of Florida, First District.
September 13, 1989.
Rehearings Denied December 1, 1989.
*1229 Elliot Zisser, and Nancy N. Nowlis, of Zisser, Robison, Spohrer & Wilner, P.A., Jacksonville, for appellant.
Samuel S. Jacobson, of Datz, Jacobson & Lembcke, P.A., Jacksonville, for appellee.
JOANOS, Judge.
The former wife, Pamela W. Bingemann, appeals orders of the trial court which modified provisions of the final judgment of dissolution and ruled on various motions for contempt. The issues presented for review are: (1) the imposition of conditions regarding payment of college expenses for the parties' son; (2) the reduction of the former husband's child support obligation; (3) the award of less than the full amount of child support arrearages claimed; and (4) the trial court's authority to enforce its 1984 modification order. We affirm in part and reverse in part.
The parties were divorced December 13, 1977. The provisions of the final judgment pertinent to this appeal state:
4. The husband shall pay for the support of the minor child, to wit: CHRISTOPHER DAVID BINGEMANN, now nine years old, the sum of Three Hundred and no/100 Dollars ($300.00) per month. Said child support payment to be made to wife and to commence on the 15 day of December, 1977, and to continue on the same day of each and every month thereafter until said minor child attains the age of twenty-one years unless said minor child decides not to, and, in fact, does not, attend a college or university for higher education. Upon this decision, said child support payments shall terminate at age eighteen and sooner if said minor child dies or becomes self-supporting.
.....
7. Over and above support payment provided herein for the minor child of the parties, the husband and wife shall each pay one-half of the cost of tuition, room, board and books for the minor child to attend at least four years of higher education.
In a modification order filed February 3, 1984, the trial court found that the needs of the minor child had increased, as had the ability of the parents to meet those needs. In keeping with those findings, the final *1230 judgment was amended to provide that the father would pay child support in the amount of $565.00 per month, rather than $300.00 per month. In all other respects, the final judgment remained the same.
The mother filed several motions for contempt for the father's failure to pay child support, claiming child support arrearages of $2,825.00, $6,780.00 and $10,170.00; and college expense arrearage of $1,024.44. In addition, the mother filed requests for discovery of the father's personal finances.
On June 22, 1988, after seeking a protective order to bar the mother's discovery requests, the father filed a motion to modify the final judgment provisions with regard to child support and payment of college expenses, and a motion for contempt, alleging that commencing in January 1987 the mother had failed to pay one-half of the son's college expenses. The father's motion for modification alleged that the provisions in the final judgment for payment of child support while the parties' son attended college were predicated on the assumption that the mother would maintain a home for herself and the son during his college years, and that the son would reside with the mother for appreciable portions of the year. The motion further alleged that the mother was no longer maintaining a home for herself, and for some time had been cohabiting with an adult male.
Evidence adduced at the hearing on the contempt motions revealed that the father had paid no child support since December 1986. In addition, letters were introduced written by the father to the mother in August and September 1986, expressing his intention to continue to pay $565.00 per month to the mother, and to treat this payment as his share of their son's college and reasonable living expenses, rather than as child support.
The record reflects that the parties' son entered Auburn University in September 1986, shortly after his eighteenth birthday. The son's attendance at Auburn was with the father's express consent. The record further reflects that the father became dissatisfied with his son's academic performance. In addition, the record demonstrates that the parties were unable to communicate effectively with each other with regard to their respective expectations and goals for their son's college career.
On August 17, 1988, the trial court issued an order on the motions for contempt and modification, finding that (1) since his enrollment at Auburn in August 1986, the parties' son had lived largely at Auburn; (2) the father had paid $13,758.00 toward his son's expenses, and the mother had paid $13,226.05; (3) in January 1987, the mother discontinued any further contribution to tuition payments and father discontinued payment of $565.00 per month child support payment to the mother; and (4) the combined payments of the parties exceeded the Auburn annual published estimates of college costs. The trial court further found that-
an implicit condition of the agreement by the parties for payment of college expenses for Chris was the assumption he would take a normal course load, would make satisfactory academic progress, and would work toward a suitable degree.
... He accordingly should hereafter be entitled to payment of college expenses from the parties for any quarter of college attendance only if he is enrolled throughout the quarter in fifteen hours of courses for which he will be entitled to credit toward his business degree program. Course credit shall not be given for free elective courses, except with approval of both parents. The parties should not be responsible for college expenses for any quarter unless Chris's grade point average in the preceding quarter equalled 2.0 or better.
The order outlined a procedure whereby the parties would share their son's college expenses with minimal contact with each other. Jurisdiction was reserved to determine the question of child support pending a hearing. On August 25, 1988, the mother filed a motion for rehearing of the August 17, 1988, order on the motions for contempt and modification.
*1231 At the hearing held October 25, 1988, the mother testified that she sold her home in December 1986, because she could not afford her mortgage payments together with the costs of her son's college expenses. After selling her house, the mother first moved to an apartment, then in mid-January 1987, she moved into her fiance's home. The mother said that she contributes equally toward the mortgage payments, utility costs, and all other operating expenses of the home. In addition, she testified that the home had been remodeled and a room added for her son, for the periods of time he lived with her during college breaks.
The father testified his decision to cease paying child support was motivated in part by the fact that the mother was living with another man. The father also stated that his objection to paying child support and college costs for his son was not related to concerns about money. Rather, his objections were based on the fact that he had no control with respect to his son's grades and degree program.
At the conclusion of the hearing, the trial court ruled that a change of circumstances occurred in September 1986, when the parties' son entered college. The court further found that the mother's financial affidavit indicated the son's living expenses were $400.00 per month. Based upon that figure, the trial court established $300.00 per month as the father's child support obligation, with such child support modification retrospective to September 1986. The father's child support arrearage was reduced to $7,800.00, by virtue of the retrospective modification. The trial court further determined that the arrearage would not be reduced for the months of September through December 1986, because the father had received credit against the college expenses for those months. In addition, the trial court determined that the father must contribute $1,800.00 toward the mother's attorney's fees. By order dated December 21, 1988, filed January 10, 1989, the trial court denied the mother's motion for rehearing of the August 17, 1988, order.
At the outset, we find the father's contention that the mother's notice of appeal does not encompass the August 17, 1988, order is without merit. The notice of appeal states that it is directed to orders "rendered December 21, 1988 and January 11, 1989. The nature of these two final orders are an Order signed December 21, 1988 denying the Motion for Rehearing of the Order on Motions for Contempt and Modification which had been signed August 17, 1988, and the Order for Support, signed January 11, 1989, which ruled upon matters reserved for further hearing in the aforesaid August 17, 1988 Order." In view of the specificity of the notice of appeal, the father was not misled concerning the subject matter of the appeal. Furthermore, Florida Rule of Appellate Procedure 9.110(k) provides that "partial final judgments are reviewable either on appeal from the partial final judgment or on appeal from the final judgment in the entire case." In this case, the August 17, 1988, order which expressly reserved jurisdiction for further proceedings in connection with child support, is such a partial final judgment.
The first issue on the merits concerns the construction given to the college costs provision of the parties' agreement, as set forth in the final judgment. A separation agreement entered into by the parties and ratified by the trial court is a contract, subject to interpretation like any other contract. Underwood v. Underwood, 64 So.2d 281 (Fla. 1953); Herrero v. Herrero, 528 So.2d 1286 (Fla. 2d DCA 1988); Kenyon v. Kenyon, 496 So.2d 839 (Fla. 2d DCA 1986) rev. denied, 506 So.2d 1042 (Fla. 1987); Bacardi v. Bacardi, 386 So.2d 1201 (Fla. 3d DCA 1980); Sosnowitz v. Sosnowitz, 342 So.2d 524 (Fla. 3d DCA), cert. denied, 352 So.2d 174 (Fla. 1977). Fundamental to contract interpretation is the rule that contract terms will be given their plain meaning in the absence of any evidence that the parties intended the words to have a special meaning. Herrero, 528 So.2d at 1287. Where the terms of the agreement are unambiguous, the court will treat the written instrument as evidence of the meaning of the contract and the parties' *1232 intention thereto. Sosnowitz, 342 So.2d at 525. It is fundamental that the court may not remake an agreement between the parties, and if there is any ambiguity, the agreement will be interpreted in accordance with the best interest of the children concerned. Martinez v. Martinez, 383 So.2d 1153, 1155 (Fla. 3d DCA 1980). In construing a contract, the court should place itself as nearly as possible in the position of the parties when the contract was executed, and should consider the object sought to be accomplished by the agreement. Florida Power Corp. v. City of Tallahassee, 154 Fla. 638, 18 So.2d 671 (1944); Bay Management, Inc. v. Beau Monde, Inc., 366 So.2d 788 (Fla. 2d DCA 1978).
In Martinez, the separation agreement incorporated into the 1975 final judgment of dissolution provided that the father would be responsible for the support of the two minor children of the parties until they reached majority or became emancipated. In addition, under the terms of the agreement, the father agreed to pay for the college and/or professional education of the children. The agreement also provided that the father was entitled to claim the children as dependents for tax purposes for as long as support was provided. Subsequently, the younger daughter wished to attend college and had been admitted to the University of Miami. When the father refused to pay for her education, the mother filed a motion for clarification of the settlement agreement. Particularly, the court was asked to determine whether such related expenses as room and board, books, tuition, etc., were contemplated by the terms of the agreement. The trial court modified the agreement to provide that the daughter could attend Miami Dade Junior College, with the expense to be borne equally by the parties until she reached age eighteen. The district court reversed, finding that the provisions of the agreement clearly required the father to pay for the daughter's education at a standard four-year institution. The court noted that although there is no duty on the part of a parent to provide a college education for his child, the power of a court to enforce an agreement between the parties to a dissolution proceeding is not limited. Martinez, 383 So.2d at 1155, citing Kern v. Kern, 360 So.2d 482 (Fla. 4th DCA 1978).
In a similar vein, in Adler v. Adler, 391 So.2d 242 (Fla. 3d DCA 1980), the court rejected the husband's argument that nothing in the property settlement agreement requiring him to be responsible for mortgage payments until the home was sold, prohibited him from claiming half the mortgage payments as a reimbursement. The court concluded that the husband was seeking to overturn and to avoid the consequences of a property settlement agreement which he entered into voluntarily.
The college costs portion of the agreement entered into by the parties in this case provides that in addition to the child support payments, "the Husband and Wife shall each pay one-half of the cost of tuition, room, board and books for the minor child to attend at least four years of higher education." The child support portion of the agreement provides, in part, that the father will pay child support until the child attains the age of twenty-one, "unless said minor child decides not to, and, in fact, does not attend a college or university for higher education." In such event, the parties agreed that child support payments would terminate when the child reached age eighteen, died, or became self supporting.
Thus, the agreement contemplated that each party would bear equal financial responsibility for the total costs (tuition, room, board, and books) of a four-year college education for their son. Markedly absent from the agreement are any restrictions concerning the particular college the son would attend; whether he would live at home, in a dormitory, or in an apartment; the course of study he would pursue; and the grade point average he would be required to earn in order to have his college expenses paid by his parents. Moreover, no evidence was presented to the trial court concerning the intention of the parties with respect to these matters at the time they entered into the agreement.
*1233 The trial court's construction of the agreement goes beyond the plain terms of the written instrument to find that the parties contemplated that their agreement to pay college expenses for their son was based on the son's compliance with certain implicit conditions. In keeping with these implicit conditions, the trial court found that the son's entitlement to payment of college costs rested upon his enrollment in fifteen hours per quarter in course work leading to his degree, a 2.0 grade point average, and no free electives unless approved by both parents. By the insertion of qualifying language which does not appear on the face of the agreement, the trial court in effect, has rewritten the parties' agreement. While the conditions might be considered reasonable, nevertheless it was improper to impose them since the requirements were not a part of the original agreement.
The second, third, and fourth issues raised in this appeal concern the reduction of the father's child support obligation from $565.00 per month to $300.00 per month; the reduction of arrearages due from $14,690.00 to $7,800.00; and the authority of the trial court to enforce the 1984 modification of the final judgment. It is well settled that a party moving for a reduction of child support bears a heavy burden to demonstrate a substantial change in circumstances, "and a heavier burden may apply when an award has been made pursuant to a settlement agreement." League v. Lassiter, 536 So.2d 365, 366 (Fla. 1st DCA 1988). See also Smith v. Smith, 399 So.2d 1116, 1117 (Fla. 4th DCA 1981); Fox v. Haislett, 388 So.2d 1261, 1265 (Fla. 2d DCA 1980). Modification should not be granted simply because one of the parties has become dissatisfied with terms which were freely negotiated. League v. Lassiter, 536 So.2d at 367. Furthermore, while one party may concede an ability to pay any reasonable amount of child support, ordinarily modification of a child support obligation should be predicated on full disclosure of the financial situation of both parties. Walton v. Walton, 537 So.2d 658, 660 (Fla. 1st DCA), review denied, 545 So.2d 1370 (Fla. 1989).
Moreover, unpaid child support is a vested right which cannot be denied unless a motion for modification is filed and favorably ruled upon. Ragan v. Thomas, 515 So.2d 405, 407 (Fla. 1st DCA 1987); Thornton v. Byrnes, 537 So.2d 1088, 1089 (Fla. 3d DCA 1989); Adams v. Adams, 423 So.2d 596, 598 (Fla. 3d DCA 1982). See also Friend v. Friend, 543 So.2d 408 (Fla. 4th DCA 1989). Thus, one required by court order to make child support payments may not take matters into his own hands, and unilaterally determine that there is a legal reason to depart from the terms of the order. Adams, 423 So.2d at 598. In addition, child support may not be modified retrospectively, i.e., the trial court has no authority to cancel or reduce a past due installment of child support. Fox v. Haislett, 388 So.2d at 1265, citing Pottinger v. Pottinger, 133 Fla. 442, 182 So. 762 (1938). See also Simon v. Simon, 123 So.2d 41 (Fla. 3d DCA 1960).
Absent a showing of legal dependence or a contractual obligation, a parent is not required to pay support for a child past the child's attainment of majority. See Grapin v. Grapin, 450 So.2d 853, 854 (Fla. 1984) (trial court may not order post-majority support simply because the child is in college and the divorced parent can afford to pay); Finn v. Finn, 312 So.2d 726 (Fla. 1975). Similarly, in those cases where the age of majority was twenty-one when the divorce decree was entered, child support increases awarded after the age of majority was lowered to eighteen may be terminated when the child reaches age eighteen, although the original child support will continue until the child reaches twenty-one. Acree v. Acree, 508 So.2d 742 (Fla. 2d DCA 1987). However, even in cases where the age of majority is eighteen, upon a showing of economic dependence, a parent may be directed to continue paying child support for a child past the age of eighteen, when such child has not yet graduated from high school. Earnhardt v. Earnhardt, 533 So.2d 328, 329 (Fla. 1st DCA 1988), review denied, 542 So.2d 988 (Fla. 1989).
*1234 The record in the instant case reflects that the parties' son attained age eighteen in August 1986, and entered Auburn University as a fulltime student in September 1986. At that time, the father notified the mother in writing of his intention to treat the $565.00 per month child support payments as his one-half share of the parties' contractual agreement to pay college expenses for their son. The father did not file a petition for modification until June 22, 1988, well after the time he ceased paying child support, and after the mother had filed several motions for contempt for child support arrearages and college expenses payable by the father.
The support order filed January 12, 1988, reduced child support, effective September 1986, on two theories. First, the trial court construed the 1984 modification to require child support of $565.00 per month as contemplating the period of time that the parties' son was in fulltime residency with the mother, i.e., through August 1986. Second, the trial court found a substantial change of circumstances in that (1) the son's attendance at Auburn relieved the mother of the cost of his fulltime residency; and (2) the mother's change in living circumstances in January 1987 reduced her financial outlay incident to support of her son. The court concluded that the son's current daily living expenses are $400.00 per month, $300.00 of which should be borne by the father, and reduced the child support payable by the father accordingly. The court also expressed concern about the legal effect of the son's majority on the payment of child support, and concluded that post-majority, the father could not be required to pay more than the originally agreed upon $300.00 per month.
Since the agreement in this case was entered into after the change in the age of majority from twenty-one to eighteen, the principle recited in Acree does not apply. Rather, the parties bound themselves contractually to support their son until he reached age twenty-one, so long as he was enrolled as a fulltime college student. In view of the parties' agreement, the trial court's authority to enforce the child support provisions in full was not altered by the son's attainment of age eighteen.
Notwithstanding the trial court's effort to frame the reduction in child support as construction of the 1984 modification order, the result was to reduce past-due installments of child support. Although there is support for the trial court's finding of a substantial change of circumstances in September 1986 when the son became a fulltime student at Auburn, the reduction of the mother's vested right to receive child support of $565.00 per month was improper with regard to the period prior to June 1988, when the father filed a motion for modification. See Thornton v. Byrnes, 537 So.2d at 1089 (recipient cannot be deprived of vested right to unpaid child support unless a motion for modification is filed and favorably acted upon).
In summary, we find the trial court's construction of the parties' agreement improperly interpolates certain terms and conditions which do not appear on the face of the instrument. Therefore, that portion of the August 17, 1988, order imposing conditions and standards which the parties' son must satisfy for payment of his college expenses is reversed and remanded with directions to delete the qualifying language. With regard to the child support issue, the record supports the trial court's determination of a substantial change of circumstances warranting a reduction in child support. However, it was improper to make such reduction retrospective to the period prior to the father's motion for modification. Although the mother acquiesced in the father's treatment of the $565.00 monthly child support payment as his contractual share of the son's college expenses, this acquiescence encompasses only the period from September through December 1986. Consequently, child support arrearages should be calculated at the rate of $565.00 per month from January 1987 through June 22, 1988, and at the rate of $300.00 per month from June 23, 1988, for the remainder of the time contemplated by the parties' agreement.
Accordingly, this cause is reversed and remanded with directions to delete from *1235 the parties' agreement the qualifying language regarding payment of college expenses, and to calculate child support arrearage at the rate of $565.00 per month from January 1987 through June 22, 1988, and at the rate of $300.00 per month thereafter. In all other respects the orders appealed are affirmed.
BOOTH and MINER, JJ., concur.