821 So.2d 350 (2002)
Jamie DELISSIO, Appellant,
v.
Michael Joseph DELISSIO, Appellee.
No. 1D00-3705.
District Court of Appeal of Florida, First District.
June 20, 2002.
Rehearing Denied July 25, 2002.
*351 Paula L. Walborsky and Mari M. Presley, Tallahassee, for Appellant.
Linda G. Miklowitz, Tallahassee, for Appellee.
PER CURIAM.
Jamie Delissio (the former wife) appeals a non-final post-dissolution order requiring Michael Joseph Delissio (the former husband) to pay certain expenses relating to the college education of the parties' only child, Cara, pursuant to the parties' Marital and Property Settlement Agreement (the Agreement).[1] The former wife argues that the trial court erred in awarding less than required under the Agreement because the trial court misinterpreted the term "room and board" to mean only the cost of a college dormitory room. We affirm because the express terms of the Agreement did not require an award greater than the amount specified in the order under review.
The parties were divorced by final judgment of dissolution of marriage in February 1997. The final judgment incorporated the Agreement. The parties had one minor child, Cara. After the dissolution, the former husband moved to Houston, Texas.
Under paragraph 8 of the Agreement, the former husband's obligation to contribute *352 to Cara's college education was described, as follows:
[The former husband] agrees to contribute to the secondary education (i.e. College/University) for [Cara]. Such contribution by [the former husband] shall be up to but not to exceed fifty percent of the costs for tuition, books, and room and board for [Cara], so long as she is attending college with a reasonable date of expected graduation.
In August 1998, Cara enrolled in Florida State University (FSU) and has attended FSU every semester since her enrollment. From December 1999 through April 2000, Cara lived with a roommate in an apartment. Cara wrote to her father, outlining her anticipated expenses and requesting his help with those expenses. The former husband replied that he could afford to pay only $150 per month toward Cara's living expenses. He offered to let her live with him and attend the University of Houston; and suggested that she obtain a student loan, find a less expensive apartment and look for additional roommates. At the time of the final hearing, the former husband had paid $235 toward Cara's college expenses.
At the hearing below, Cara testified that, since the former husband did not provide her any financial assistance, she was required to live with the former wife, who, except for one semester, had paid all of Cara's actual living expenses. The former wife estimated that Cara's monthly living expenses while living with her were $325 for room and $200 for food. The former wife computed these estimated expenses based upon, in part, the room costs for a student living on campus estimated by FSU. The former wife proposed to the trial court two alternative methods by which the trial court could establish the former husband's obligation to pay for a portion of costs already expended for Cara's tuition, books, room and board. The first method would require the former husband to pay one-half of the estimated expenses incurred by Cara and by the former wife for Cara's room, board, tuition and books. The second method would require the former husband to pay all of the estimated expenses for room, board, tuition and books, reduced by the amount of the grants and scholarships received by Cara.
After the hearing, the trial court entered an order providing, in part, as follows:
3. It is not necessary to determine whether the Former Husband's promise to pay specific college expenses in the instant marital settlement agreement is either a support provision or a property provision. However, it is a binding obligation that is enforceable by this Court.
4. Former Husband is obligated to pay 50% of the hard costs for tuition, books, and room and board. The daughter has fulfilled the condition that she be attending college with a reasonable date of expected graduation.
5. The Court finds that tuition and fees to date are $4,278.00. Books and supplies, which the Court finds reasonable, would be $1,166.00. The Court does not find that there is any additional sums for room and board that is within the contemplation of paragraph 8. The Court interprets the phrase "room and board" to refer to an on campus dormitory setting. An apartment is not "room and board."
6. Former Husband claims offsets against the tuition and books of the scholarships and grants that the parties' child has been awarded. The Court rejects this argument. There is no such provision conditioning Former Husband's contribution on any kind of set off. Therefore, total sums for tuition and books equal $5,944.00 ($4278 + *353 1666-2= $2,972 with a credit of $235 which the parties agree Former Husband has contributed toward the college expenses, leaving Former Husband a balance of $2,737, which should accrue interest ...).
The former wife appeals, arguing only that the trial court erred in failing to award an amount for the cost of Cara's room and board. The former husband has not filed a cross-appeal.
The former husband does not contest the trial court's ruling that paragraph 8 constitutes a binding obligation on him. Compare May v. Sessums & Mason, P.A., 700 So.2d 22, 26-27 (Fla. 2d DCA 1997); see also Charles v. Leavitt, 264 Ga. 160, 442 S.E.2d 241, 242 (1994). The former husband agrees that he is obligated to pay up to fifty percent of the cost of Cara's books, tuition, room and board. He contends, however, that since Cara was receiving grants and scholarships, his obligation was only for up to fifty percent of the costs above that covered by grants and scholarships. Further, the former husband argues that the former wife's estimates of Cara's share of the rent, utilities and food were too high. Finally, he submits that paragraph 8 of the Agreement did not obligate him to pay fifty percent of Cara's expenses, but only "up to," and not to exceed, fifty percent; and that the order should be affirmed because the amount awarded by the trial court was consistent with his obligations under paragraph 8.
"A separation agreement entered into by the parties and ratified by the trial court is a contract, subject to interpretation like any other contract." Bingemann v. Bingemann, 551 So.2d 1228, 1231 (Fla. 1st DCA 1989), rev. denied, 560 So.2d 232 (Fla.1990). "Interpretation of a marital settlement agreement as with a contract is a matter of law putting the appellate court on equal footing with the trial court as interpreter of the written document." Ballantyne v. Ballantyne, 666 So.2d 957, 958 (Fla. 1st DCA 1996); see also McIlmoil v. McIlmoil, 784 So.2d 557 (Fla. 1st DCA 2001). Our standard of review is de novo. See Gibbs Constr. Co. v. S.L. Page Corp., 755 So.2d 787, 790 (Fla. 2d DCA 2000).
Contract terms are given their plain meaning in the absence of any evidence that the parties intended the words to have a special meaning. See Bingemann, 551 So.2d at 1231. "Where the terms of the agreement are unambiguous, the court will treat the written instrument as evidence of the meaning of the contract and the parties' intention thereto." Id. at 1231-1232. Courts are not to isolate a single term or group of words and read that part in isolation; the goal is to arrive at a reasonable interpretation of the text of the entire agreement to accomplish its stated meaning and purpose. See Brown v. Travelers Ins. Co., 649 So.2d 912, 914-915 (Fla. 4th DCA 1995). Further, a court may not remake an agreement between the parties and, if there is any ambiguity, the agreement will be interpreted in accordance with the best interest of the children concerned. See Bingemann, 551 So.2d at 1232; see also Ballantyne, 666 So.2d at 958-959. "In construing a contract, the court should place itself as nearly as possible in the position of the parties when the contract was executed, and should consider the object sought to be accomplished by the agreement." Bingemann, 551 So.2d at 1232; see also Ballantyne, 666 So.2d at 959.
We agree with the former wife that nothing in the Agreement requires Cara to reside in a dormitory or restricts the term "room and board" to the cost of a college dormitory room and meal plan. See Bingemann, 551 So.2d at 1232-33; see also *354 Reynolds v. Diamond, 605 So.2d 525 (Fla. 4th DCA 1992)(father's obligation to pay child's "college expenses" includes obligation to pay for room and board). We reject, however, the former wife's claim that the trial court erred in not requiring, pursuant to Paragraph 8 of the Agreement, the former husband to pay a greater portion of the expenses for "tuition, books, room and board." Regardless of what might be considered a reasonable interpretation of the terms "tuition, books, room and board," the amount awarded by the trial court is not legally insufficient under the plain language of the Agreement. Paragraph 8 of the Agreement establishes the former husband's obligation to contribute to Cara's college education to an amount "up to but not to exceed fifty percent" of the designated expenses. This plain language does not obligate the former husband to pay one-half of these expenses. Rather, it obligates him to pay only "up to but not to exceed" one-half. Based upon the competent substantial evidence in the record introduced by the former wife and found reasonable by the trial court, the trial court's award is consistent with the former husband's contractual obligations under Paragraph 8. Because the Agreement did not obligate the former husband to pay any more than the amount awarded in the order under review, the former wife's argument on appeal fails.
AFFIRMED.
ALLEN, C.J., AND VAN NORTWICK, J., CONCUR, AND BROWNING, J., DISSENTS WITH WRITTEN OPINION.
BROWNING, J., dissents.
The majority admits the trial court erred, but affirms on a basis not argued by the appellee (the former husband) or appellant (former wife) in the trial court or this court. Accordingly, I dissent.
Significantly, the former husband did not cross-appeal, file an answer brief, or present any argument in this appeal. Accordingly, the only issue before this court is that presented by the former wife, i.e., whether the trial court erred by interpreting the phrase "room and board" in the parties' marital settlement agreement (the agreement) to mean only a dormitory and university meal plan. I agree with the majority's conclusion that the trial court erred by interpreting the phrase "room and board" to mean only a college dormitory room and a meal plan. Because that was the only question raised on appeal, the analysis should have stopped with that conclusion. However, the majority goes on to decide the case based on an interpretation of the agreement which was not argued by either party in the trial court or on appeal.
In the trial court, the former wife sought enforcement of paragraph 8 of the agreement, which requires the former husband "to contribute to the secondary education" of the parties' minor child (Cara), "up to but not to exceed fifty percent of the costs for tuition, books, and room and board...." The majority opinion states the former husband "submits" paragraph 8 of the agreement "did not obligate him to pay fifty percent of Cara's expenses, but only `up to' and not to exceed, fifty percent; and that the order should be affirmed because the amount provided by the trial court was consistent with his obligations under paragraph 8." This statement is without any factual basis. First, as noted, the former husband did not file an answer brief or present any argument in this appeal. Thus, on appeal, the former husband has submitted no argument nor asserted any basis for affirmance. Furthermore, in the trial court, the former husband did not contest his obligation to pay fifty percent, or his "fair share" of his daughter's college expenses, including *355 room and board. His only defense to the former wife's claim for "room and board" was that the former wife's estimates were "too high" and he wanted receipts for room and board expenditures to ensure he did not pay more than his "fair share." He assumed his fifty percent, or "fair share," would be ascertained after deducting the amount of any scholarships or grants his daughter received and the parties would "split" the balance. In closing arguments, the former husband's attorney did state: "So, arguably, one percent would be in compliance with the contract." However, the former husband's attorney did not argue that position. Rather, he concluded: "When [the former husband] gets the accurate amounts, he will pay them."
Implicitly, affirmance is based upon the "tipsy coachman rule," which provides that a trial court's erroneous ruling may be affirmed if another basis supports affirmance. See Carraway v. Armour and Company, 156 So.2d 494 (Fla.1963). However, in those cases where application of the rule determines a case's outcome, the opposing party has always advanced the alternative basis for affirmance. See City of Coral Gables v. Baljet, 263 So.2d 273 (Fla. 3d DCA 1972); State v. Stedman, 238 So.2d 615 (Fla.1970); C.W. Chase, Jr. v. Cowart, 102 So.2d 147 (Fla.1958); Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638 (Fla.1999); Green v. First Am. Bank & Trust, 511 So.2d 569 (Fla. 4th DCA 1987); E.A. Law & Co. v. Provende, Inc., 471 So.2d 107 (Fla. 3d DCA 1985). Here, the parties will, for the first time, become acquainted with the argument which forms the basis and rationale of this court's decision upon receipt of the majority's opinion. Because the basis for affirmance was not an alternate theory presented by the former husband, I believe the majority misapplied the "tipsy coachman rule." Moreover, in my judgment, when an appellate court affirms a trial court's erroneous ruling by searching for a basis for affirmance not argued by the parties, as the majority does here, an unintended byproduct is the impression that the court is a part of the adversarial process rather than a neutral judicial arbitrator. I realize that an appellate court must act sue sponte on issues involving jurisdiction, public policy, and illegality. However, this case involves the parties' private agreement that does not touch upon these exceptions. Furthermore, when a case is decided on an issue unnoticed to the parties, serious due process considerations are raised. Winddancer v. Stein, 765 So.2d 747 (Fla. 1st DCA 2000); Hancock v. Tipton, 732 So.2d 369 (Fla. 2nd DCA 1999). Thus, I cannot align with the majority.
Even assuming arguendo the majority's basis for affirmance was argued by the former husband, I would still reverse. The majority correctly states that, in contract interpretation, "the goal is to arrive at a reasonable interpretation of the text of the entire agreement to accomplish its stated meaning and purpose," and "[i]n construing a contract, the court should place itself as nearly as possible in the position of the parties when the contract was executed and should consider the object sought to be accomplished by the agreement." Brown v. Travelers Ins. Co., 649 So.2d 912 (Fla. 4th DCA 1995). Based on the testimony adduced at trial and the language of the agreement, it is clear that, by entering the agreement, the parties intended equally to share their daughter's college expenses. In my opinion, the majority's conclusion that the agreement does not obligate the former husband to pay one-half of these expenses is an unreasonable interpretation of the agreement, contrary to the parties' express intent, and accomplishes exactly what the majority says is impermissible: a remaking of the *356 parties' agreement. See Bingemann, 551 So.2d at 1232; see also Ballantyne, 666 So.2d at 958-959.
In my judgment, the majority sua sponte injected an issue not raised by the parties, then impermissibly remade the parties' agreement on a basis not argued by the parties and, in so doing, denied the former wife due process. I would reverse the trial court for its ruling that the majority admits is erroneous, based on the sole ground raised on appeal. Accordingly, I dissent.
NOTES
[1] We have jurisdiction to review this non-final order pursuant to rule 9.130(a)(4), Florida Rules of Appellate Procedure.