925 So.2d 356 (2006)
Colin MUIR, Appellant,
v.
Carol Ann MUIR, Appellee.
No. 5D05-1998.
District Court of Appeal of Florida, Fifth District.
February 24, 2006.
Rehearing Denied April 7, 2006.
*357 Jason M. Gordon, of Law Office of Jason M. Gordon, Cocoa Beach, for Appellant.
Walter T. Rose, Jr., of Walter T. Rose, Jr., P.A., Cocoa Beach, for Appellee.
SHARP, W., J.
Colin Muir, the former husband, appeals from an order of the trial court which assessed alimony arrearages against him based on its interpretation of a provision in the parties' marital settlement agreement that was incorporated in the final judgment. *358 At issue is the proper interpretation of the provision and the resulting proper calculation of the arrearage. We disagree with the trial court's interpretation and we reverse and remand.
Provision 13 of the final judgment provided that Carol Muir, the former wife, was to receive one-third of Colin's gross income. The parties agreed Colin's gross income was $400,000 per year. The parties also contemplated that Colin's gross income might decrease by more than twenty percent. In such an event, the provision granted Colin the right to either continue to pay Carol the same amount or reduce the amount by using a formula set out in provision 13 of the Agreement, to recalculate his alimony obligation.
In 2003, Colin became unemployed, and shortly thereafter obtained a position working as an independent contractor physician for Carnival Cruise Lines. His income dropped to $80,000 per year. Due to this reduction in income, Colin utilized the formula in provision 13 and reduced his alimony payments to $980 per month after he began working for Carnival. During the period of time Colin was unemployed, from August to November of 2003, he paid no alimony to Carol.
The parties and the court agreed that Colin had the option under provision 13 to recalculate his alimony obligation because his income had dropped more than twenty percent. However, the trial court determined that the effective date Colin made the election to reduce his alimony obligation was on the date that he filed a motion to enforce the Agreement. By fixing the effective date of Colin's election to pay a reduced alimony payment long after he had begun paying the lesser sum, the court assessed a large arrearage in Carol's favor.
It is unclear why the trial court selected this date. Colin testified at the hearing, and recited in his motion, that he had made the election when he started paying the lower amount of alimony to Carol. There was no conflicting evidence, and provision 13 of the Agreement is determinative of this issue.
We begin by observing that a marital agreement entered into by the parties and ratified by the court is a contract which is subject to interpretation, just like any other contract. See Ospina-Baraya v. Heiligers, 909 So.2d 465 (Fla. 4th DCA 2005); Delissio v. Delissio, 821 So.2d 350, 353 (Fla. 1st DCA 2002); Bingemann v. Bingemann, 551 So.2d 1228, 1231 (Fla. 1st DCA 1989).
Interpretation of a marital settlement agreement is a matter of law and places the appellate court on an equal footing with the trial court as interpreter of the written document. See Ospina-Baraya; Delissio; Ballantyne v. Ballantyne, 666 So.2d 957, 958 (Fla. 1st DCA 1996). Thus, the standard of review is de novo. See Ospina-Baraya; Delissio; Gibbs Const. Co. v. S.L. Page Corp., 755 So.2d 787, 790 (Fla. 2d DCA 2000).
With respect to the election date, the second paragraph in provision 13 provides, in its entirety:
That should the Husband's income, from his employment as a physician, decrease more than twenty percent (20%) below its current level, the parties shall recalculate the amount of support that should be paid by the Husband to the Wife, the gross income of both parties would be added together, it would then be divided by one third and from that one-third, the current income of the Wife would be deducted and the balance would be paid by the Husband to the Wife as and for alimony under the terms of this paragraph. That if this should occur, the income of both parties from all sources shall be included in this formula and it shall not be limited as set forth herein *359 above. Should the Husband's income decrease by an amount of more than twenty percent (20%) from its current level, that being approximately $400,000.00 annually, and should the Husband desire to continue to pay the Wife at the existing rate at the time of said change, said formula shall not be applied. This option rests with the Husband solely to make this determination in the choice of payment or recalculation. (emphasis added)
The language of this paragraph does not require Colin to file any documents or take any other steps before effectively recalculating Carol's alimony payments. Therefore, the election was effective on the date Colin reduced the alimony payments, and any arrearage award based on the date of his motion is improper.
The second issue in this case involves the correctness of the amount of alimony paid in any given year. The first paragraph of provision 13 provides, in part:
The Husband shall initially pay to the Wife the sum of $4,500.00 per month on the first of the month following the signing of the Marital Settlement Agreement and continuing on the 1st day of each and every month thereafter until January 1st of each year. At that time, the Husband's income shall be evaluated and end of year adjustments shall be made to insure that the Wife receives one-third of the Husband's gross income. There will be no inclusion of any extra monies or extra income that the Husband may earn from any employment outside of Turner & Muir, P.A. or from any income that the Wife may earn if she becomes employed. Also, unearned income by either party shall not effect the terms of this alimony provision.. . .. . . . The Husband shall provide the Wife copies of his income tax returns each and every year within thirty days of filing said income tax, for so long as he owes an obligation of support. (emphasis added)
This paragraph pertains to the time prior to Colin's reduction of the alimony obligation pursuant to the formula in the second paragraph of provision 13. It provides that on January 1st of each year, Colin's income will be evaluated to assure that Carol, in fact, received one-third of his gross income for the year just passed.
Carol's attorney argued below that this provision set Colin's future alimony obligation, i.e., the January income evaluation set Carol's alimony for the coming year, not the year just passed. However, the foregoing language does not support such an interpretation. The paragraph provides that on January 1st of each year, Colin's income shall be evaluated and "end of year adjustments shall be made to insure that the Wife receives one-third of the Husband's gross income."
Obviously, the one-third amount cannot be determined until the year has passed and Colin's total income is susceptible of being determined. The correctness of the amount of alimony paid in such instances, will always have to wait for final determination until after the end of the year, when the parties file their tax returns and exchange them in the new year. The adjustment must therefore apply to the previous year.
The third and last issue is whether the January requirement of evaluation and adjustment of alimony, found in paragraph one, inures to paragraph two, and if so whether it applies to both parties after Colin has exercised his option to reduce Carol's alimony.
The income included in the second paragraph of provision 13 differs from the income included in the first paragraph of that provision. The first paragraph does not consider "any extra monies or extra *360 income that the Husband may earn from any employment outside of Turner & Muir, P.A. or from any income that the Wife may earn if she becomes employed." The only income considered in this paragraph is Colin's income from his normal employment.
However, in paragraph two, after the option to reduce alimony has been exercised, the gross income of both parties must be added together, and then divided by one third. From that one-third, Carol's current income must be deducted, and the remainder constitutes Colin's alimony obligation to Carol. If the reduction occurs, the income of both parties from all sources shall be included in this formula.
Although there is no specific requirement in paragraph two that either party submit income tax returns in January of each year to calculate the amount of alimony paid and due for the previous year, there is a logical relation between the two paragraphs, and such a requirement is the only way that the second paragraph can accurately be calculated.
It seems apparent that once the formula is utilized, any adjustment between the parties works both ways. Neither party's income is fully discernable until the first of the following year, when the parties file and exchange their tax returns. An adjustment may require Colin to pay increased alimony, no alimony, or it may give Colin a credit for alimony previously paid, all of which is dependent on the parties incomes for the past year. Adjustments based on the parties' incomes for the ending year may favor one or the other.
REVERSED AND REMANDED.
TORPY and LAWSON, JJ., concur.