951 So.2d 80 (2007)
Theodore A. AVELLONE, Appellant,
v.
Susan E. AVELLONE n/k/a Susan E. Rice, Appellee.
No. 1D06-5219.
District Court of Appeal of Florida, First District.
March 13, 2007.
*81 Theodore A. Avellone, pro se, Appellant.
Joshua D. Zelman and Patricia M. Durst of Durst, Harnden & Zelman, PL, Tallahassee, for Appellee.
PER CURIAM.
Appellant, Theodore A. Avellone, appeals a non-final order denying his motion for contempt and to enforce the parties' Marital Settlement Agreement ("MSA"). Appellant raises five issues on appeal, only one of which merits discussion. According to Appellant, the trial court failed to give operative effect to certain provisions contained in the MSA. Finding no merit in this argument, we affirm.
Prior to the parties' execution of the MSA, Appellee's counsel wrote a letter to Appellant's counsel on April 8, 2004, informing her that Appellee, Susan E. Avellone n/k/a Susan E. Rice, discovered through a response to a request for production that Appellant distributed to himself $17,140.03 as a cash distribution from a retirement account in 2002 and had the money sent directly to him at work. Appellee had no knowledge of the distribution when she prepared the couple's 2002 tax return. Appellee's counsel demanded that Appellant see Marcia Petford, a CPA, to file an amended 2002 tax return and that *82 he take responsibility for any costs and penalties that might arise.
In an April 15, 2004, letter addressed to Ms. Petford, Appellant explained his belief that taxes had already been withheld when he received his retirement distribution. Appellant set forth, "I obviously want you to prepare [an amended tax return], and if additional taxes are owed, to please let me know what that amount is." Appellant further set forth:
Also, even though I think that the 2002 return was jointly filed by my wife . . . this retirement fund distribution and any associated tax forms were unknown to my wife and therefore any additional payments that may be due as a result, as well as any fees you may charge for any work done as a result of this, are to be my responsibility. To the extent that there may be any additional taxes, interest, or "penalties" due based on your analysis, I would like to ensure that my wife does not experience any such negative repercussions, as she was unaware of the distribution or any tax forms associated with this. Again, I had no idea that it was possible that an insufficient amount of taxes had been taken out already.
The parties executed the MSA on April 30, 2004. The MSA provides in pertinent part:
5. MARITAL DEBTS: Each party shall be responsible for the debts in his or her own name, which they incurred after December 1, 2003, and will not look to the other party for payment. Each party shall be responsible for his or her own student loans. This Wife shall be responsible for the student loans held by Sallie Mae and KHESLC. The Husband shall be responsible for the student loan held by Nelnet. The Wife shall be responsible for the car loan held by Southeast Toyota Finance. The Wife will be responsible for the mortgages on the former marital home, the Hill Gail Property, held by Washington Mutual and Wachovia Bank. Except as provided above, no other marital obligations of the parties are known to exist. If such an obligation is discovered, the party who incurred it shall be responsible for its payment and hold the other harmless from any liability on it.
10. ENTIRE AGREEMENT: This agreement constitutes the entire agreement between the parties and supercedes any prior understandings or agreements (including the Separation Agreement executed by the parties on December 12, 2003) whether written or oral, made by them on the subjects covered in this agreement.
11. MUTUAL RELEASE: Each party does hereby further waive and release his or her rights in and to the other's real, personal, and mixed property owned now or acquired in the future, including dower, homestead, and all other statutory rights which may now be enforced or which may be enforced in the future, and all other interest, rights, property claims, demands, and claims at law or in equity which either party does or may have in the other's property. Without limiting the generality of the foregoing, the parties hereto do further relinquish any and all right that they now have or may hereafter acquire as the other party's spouse under the present or future laws of any jurisdiction, including but not limited to the right:
A. To elect to take against any Will or Codicil of the party now or hereafter in force;
B. To share in the other party's estate; and

*83 C. To act as personal representative in the other party's estate.
The trial court ratified the MSA, incorporated it into the Final Judgment of Dissolution of Marriage, and reserved jurisdiction to enforce or modify the judgment.
In August 2006, Appellant filed a motion for contempt and to enforce the MSA wherein he explained that the Internal Revenue Service ("IRS") advised him in March 2006 that Appellee had filed a claim requesting relief from a 2002 tax liability under the IRS's Innocent Spouse Provision. Appellant argued that Appellee's claim violated the plain terms of the MSA because the parties waived the right to bring any claims against each other. Appellant attached Appellee's April 8, 2004, letter to his motion. During the hearing, the trial court denied the motion. This appeal followed.
A marital settlement agreement is a contract subject to interpretation like any other contract. Delissio v. Delissio, 821 So.2d 350, 353 (Fla. 1st DCA 2002). The standard of review is de novo. Id. Where an agreement's terms are unambiguous, a court must treat the written instrument as evidence of the agreement's meaning and the parties' intention. Id. A court must not isolate a single term or group of words and read that part in isolation. Id. Rather, the goal is to arrive at a reasonable interpretation of the text of the entire agreement in order to accomplish the agreement's stated meaning and purpose. Id.
According to Appellant, the trial court failed to give operative effect to the MSA's Entire Agreement provision. Importantly, on appeal, Appellant characterizes his April 15, 2004, letter as a prior understanding or agreement. He contends, however, that the MSA superceded this prior understanding. We disagree. Pursuant to the Entire Agreement provision, a prior understanding or agreement is superceded by the MSA only if it concerns a subject "covered" in the MSA. The only debts expressly addressed in paragraph five of the MSA were the parties' student loans, a car loan, and home mortgages. The MSA makes no mention of taxes or tax liability. Appellant concedes on appeal that any 2002 tax liability was not "referenced" in the MSA. As such, pursuant to the Entire Agreement provision, the MSA did not supercede the parties' prior tax understanding.
Appellant also relies upon the Mutual Release provision in support of his argument that the trial court erred in denying his motion. "`The construction and effect to be accorded a release depends on its purpose, the terms in which it is stated, and the subject matter to which it applies.'" Cerniglia v. Cerniglia, 679 So.2d 1160, 1164 (Fla.1996) (citation omitted). In interpreting a release and determining the parties' intent, the entire agreement must be examined rather than detached portions of it. Id.
According to Appellant, Appellee waived her right to file the tax relief claim. Again, we disagree. Appellant's interpretation of the Mutual Release provision cannot be reconciled with our interpretation of the Entire Agreement provision. If we were to accept Appellant's interpretation, Appellee would have no recourse to seek compliance with the prior understanding. In such a situation, the MSA would essentially supercede the prior understanding notwithstanding the fact that it involves a subject not covered in the MSA, and that portion of the Entire Agreement provision would be rendered meaningless.
Upon our review of the entire MSA, including those provisions relied upon by Appellant, we hold that the trial court did *84 not err in denying Appellant's motion. Accordingly, we AFFIRM.
DAVIS, PADOVANO, and HAWKES, JJ., concur.