SWANSON, J.
Former Wife has appealed the trial court’s post-dissolution Amended Order on Former Wife’s Amended Motion for Contempt, to Enforce, and for Attorney’s Fees, and from the court’s Order Granting Attorney’s Fees. As her first point on appeal, Former Wife argues the trial court erred in finding the parties’ Marital Settlement Agreement (“MSA”) unambiguously provided for bridge-the-gap alimony as contemplated in section 61.08(5), Florida Statutes (2010), and, therefore, erred in refusing to enforce the provision because of her remarriage. Former Wife’s second point challenges the trial court’s award of fees to her attorney in the reduced amount of $1000, claiming the court failed initially to determine a lodestar amount. For the reasons that follow, we reverse on both points.
This short-term marriage, having lasted approximately four and one half years, was dissolved in May 2010 by final judgment in which the MSA was adopted and incorporated. As regards Former Wife’s first point, paragraph 2.1 of the agreement sets forth the following provision for alimony:
ALIMONY. The Husband shall pay to the Wife Bridge-the-Gap alimony which is non-modifiable in the amount of $500.00 a month for three (8) years. The first payment [is] due on May 20th and every month thereafter.
(Emphasis in original.) After entry of the Final Judgment of Dissolution of Marriage, Former Husband made only two partial payments of alimony, each in the amount of $235. In May 2011, the trial court entered an order finding Former Husband owed Former Wife $5,197.97 in unpaid alimony and attorney’s fees, and ordered him to pay this amount at the rate of $50 per month, in addition to his ongoing obligations of $500 per month for alimony, and $61.55 per month for attorney’s fees. Thereafter, Former Husband failed to make any of the payments ordered by the court.
In the meantime, Former Wife remarried on April 23, 2011. In June 2012, she filed a second motion to enforce Former Husband’s obligations, followed by an amended motion filed in January 2013. At the ensuing hearing, there was no dispute over Former Husband’s failure to abide by the trial court’s May 2011 enforcement order and the final judgment. He argued, however, that by operation of section 61.08(5), his alimony obligation ceased au- *1148 toraatically upon Former Wife’s remarriage. That subsection states:
Bridge-the-gap alimony may be awarded to assist a party by providing support to allow the party to make a transition from being married to being single. Bridge-the-gap alimony is designed to assist a party with legitimate identifiable short-term needs, and the length of an award may not exceed 2 years. An award of bridge-the-gap alimony terminates upon the death of either party or upon the remarriage of the party receiving alimony. An award of bridge-the-gap alimony shall not be modifiable in amount or duration.
(Emphasis added.) The trial court agreed, ruling that paragraph 2.1 of the parties’ MSA was clear: The parties intended Former Wife to receive bridge-the-gap alimony, but Former Husband’s obligation to pay the alimony terminated under the language of the statute when Former Wife remarried. We hold the trial court erred as a matter of law in reaching this conclusion.
Our decision is guided by certain unassailable principles. First, it is well settled that in a dissolution of marriage proceeding, the parties are free to agree to obligations the trial court could not order in the absence of an agreement. See, e.g., O’Malley v. Pan Am. Bank of Orlando, N.A., 384 So.2d 1258 (Fla.1980) (holding parties may agree for an alimony obligation to continue beyond the death of the obligor and be enforceable against his estate); Bingemann v. Bingemann, 551 So.2d 1228 (Fla. 1st DCA 1989) (finding parties had assumed the obligation to pay college expenses for their child beyond the age of emancipation and holding the trial court must enforce that agreement as a matter of contract). But cf. Franks v. Franks, 86 So.3d 1252 (Fla. 1st DCA 2012) (holding that the bridge-the-gap alimony the trial court awarded to the wife, absent an agreement, exceeded the period permitted by section 61.08(5), and remanding case to the trial court to clarify the nature of the alimony awarded). Second,
A marital settlement agreement is a contract subject to interpretation like any other contract. Delissio v. Delissio, 821 So.2d 350, 353 (Fla. 1st DCA 2002).... Where an agreement’s terms are unambiguous, a court must treat the written instrument as evidence of the agreement’s meaning and the parties’ intention. Id. A court must not isolate a single term or group of words and read that part in isolation. Id. Rather, the goal is to arrive at a reasonable interpretation of the text of the entire agreement in order to accomplish the agreement’s stated meaning and purpose. Id.
Avellone v. Avellone, 951 So.2d 80, 83 (Fla. 1st DCA 2007). Third and finally, as the Florida Supreme Court ruled in Underwood v. Underwood, 64 So.2d 281 (Fla.1953), “[i]t is not what [the alimony] is called but what it is that fixes its legal status. It is the substance and not the form which is controlling.” Id. at 288.
Applying these principles to the instant case, we conclude the language in paragraph 2.1 of the parties’ MSA is clear and unambiguous. The alimony agreed to by the parties is non-modifiable and in the amount of $500, to be paid monthly for three (3) years. No provision was included stating the alimony would cease upon Former Wife’s remarriage. Although section 61.08(5) does contain that proviso, that fact is not determinative of our analysis. The unambiguous language of the parties’ agreement, and not the statute, controls here, and because the language of paragraph 2.1 is clear and unambiguous, we “must treat the written instrument as evidence of the agreement’s meaning and the parties’ intention.” Delissio, 821 So.2d at 353. To do otherwise would most certainly vault form over substance. Underwood, *1149 64 So.2d at 288. Accordingly, we hold that Former Husband’s obligation to pay Former Wife $500 per month for three years did not terminate upon Former Wife’s remarriage. Thus, the trial court erred in failing to order enforcement of paragraph 2.1 of the MSA.
As her second point on appeal, Former Wife contends the trial court erred in failing to determine a lodestar amount of attorney’s fees and by reducing the requested amount without providing justification. Again, we turn to the parties’ MSA, which provides in paragraph 7.12 the following:
ENFORCEMENT OF THIS AGREEMENT. The party against whom a Court Order is secured to compel performance of this Agreement, or any part hereof, agrees to pay the prevailing party all costs and reasonable attorney’s fees in connection with such proceeding.
(Emphasis in original.) “The Florida Supreme Court has explained that ‘the party prevailing on the significant issues in the litigation is the party that should be considered the prevailing party for attorney’s fees.’ ” Conway v. Conway, 111 So.3d 925, 928 (Fla. 1st DCA 2013) (quoting Moritz v. Hoyt Enters., Inc., 604 So.2d 807, 810 (Fla.1992)). In this case, there is no question that Former Wife is the prevailing party.
In her second motion to enforce Former Husband’s financial obligations under the final judgment, Former Wife sought $11,159.50 in attorney’s fees, which had accrued since her previous enforcement action. The trial court considered the general equitable factors enunciated in Rosen v. Rosen, 696 So.2d 697 (Fla.1997), relevant to an award of attorney’s fees under section 61.16, Florida Statutes, including the duration and scope of the litigation, the parties’ respective financial situations, and the fact that it was granting, only partially, Former Wife’s motion. It then awarded Former Wife’s attorney $1000 in fees. In Rosen, the Florida Supreme Court was concerned primarily with “pointing out that proceedings under chapter 61 are in equity and governed by basic rules of fairness as opposed to the strict rule of law.” Id. at 700. Nevertheless, it confirmed that “arriving at the ‘lodestar’ (reasonable hours times a reasonable hourly rate) may be an appropriate starting point for setting a reasonable attorney’s fee in domestic relations cases[.]” Id. (discussing Fla. Patient’s Comp. Fund v. Rowe, 472 So.2d 1145 (Fla.1985), in the wake of Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828, 835 (Fla.1990)).
In the present case, the trial court failed to utilize a lodestar amount as a starting point, and nowhere in the order on review or in the record on appeal is there evidence from which we can divine the basis for the court’s award of only $1000, when the amount requested was over ten times that amount. In short, the trial court’s award eludes appellate review. Consequently, we hold, under these circumstances, that the trial court abused its discretion in awarding Former Wife $1000 in attorney’s fees without first fixing a lodestar amount.
In summation, the portion of the Amended Order on Former Wife’s Amended Motion for Contempt, to Enforce, and for Attorney’s Fees that held the Former Wife’s entitlement to alimony terminated upon her remarriage, along with the trial court’s Order Granting Attorney’s Fees in the amount of $1000, are hereby REVERSED, and the cause is REMANDED for further proceedings consistent with this opinion.
PADOVANO and CLARK, JJ., concur.