593 So.2d 1131 (1992)
Jane Gibbons CARROLL, Appellant,
v.
Ira Greene Briggs CARROLL, Sr., Appellee.
No. 91-01531.
District Court of Appeal of Florida, Second District.
February 7, 1992.
*1132 Henry P. Trawick, Jr., of Trawick, Hammersley & Valentine, P.A., Sarasota, for appellant.
Ira Greene Briggs Carroll, Sr., pro se.
PARKER, Judge.
Jane Carroll, the former wife of Ira Carroll, Sr., appeals a supplemental final judgment which temporarily suspended child support based upon her sixteen-year-old son, Hunter Carroll, refusing to visit his father, Mr. Carroll. Although we sympathize with a trial judge dealing with an almost impossible situation, we reverse that portion of the judgment suspending the father's child support obligation, concluding that the noncustodial parent's child support obligation does not cease upon the child refusing to visit the noncustodial parent.
A review of this court file reflects that for six years following a final judgment of dissolution of marriage, there has been bitter strife between Mr. and Mrs. Carroll over Mr. Carroll's rights of visitation with their three children. Two things happened to involve this court. The first was that the parties' sixteen-year-old child filed a motion through his mother's attorney to have the trial judge terminate the requirement that he visit his father. The trial court granted the son's motion. The next thing to occur was that the trial court, on its own motion, terminated Mr. Carroll's child support obligation for that child on a temporary basis until visitation was reinstituted.
We recognize the dilemma of the trial judge and quote from his order denying Mrs. Carroll's motion for rehearing:
The Former Wife's position is that the Court erred in tying a child support obligation to a visitation issue. Ordinarily, the Former Wife would be correct, and as a general rule it is clear that both Chapter 61 and the apposite case law provide that child support cannot be conditioned upon visitation. However, the instant case defies, in many ways, the general rule.
It would serve no useful purpose, except for appellate review, to expend the labor necessary to fully lay out the post judgment etiology of this case. The file speaks for itself. By the time the temporary visitation order was entered in the fall of last year, the parties and the child in question had reached a point justifying not only a temporary cessation of visitation, but also support for that child. Hunter Carroll and his father had become adversaries in about every sense of the word. They had escalated their enmity to the point of a physical confrontation. Hunter referred to his father as "Mr. Carroll," and indicated no respect whatsoever for him. Hunter actively resisted visitation with his father and in fact was the movant himself in the motion to terminate visitation. Hunter Carroll is a very sophisticated, bright, articulate sixteen year old boy who has, as he so forcefully points out, reached an age of discretion which all but insures that if he doesn't want to have meaningful visitation, it simply will not occur. He believes he has been driven to this emotional juncture by his father's behavior; the father believes his son's attitude is a by-product of the poisonous relationship between him and his former wife who is the custodial parent. Whatever the truth, it appears to the Court that where a child of sufficient maturity and intellect and discretion moves to terminate visitation, and where the motion is granted, this conduct justifies the suspension of support on a temporary basis. Of course support will be automatically and *1133 immediately re-instated once visitation re-commences.
We first note that this record contains no findings by the trial judge that Mrs. Carroll orchestrated her son's motion to terminate visitation. We do not have to address today what this court's position would be if that were the case. Although Mr. Carroll feels strongly that the wife and maternal grandparents have caused these problems, the trial judge made no such findings. Florida Statutes do provide a remedy for a noncustodial parent who is denied his or her visitation rights by the custodial parent. See § 61.13(4)(c), Fla. Stat. (1989).
Both natural parents share a duty to support a minor child, even though the trial court, under section 61.13(1)(a), may order either or both parents to pay child support upon dissolution of the marriage. Martin v. Martin, 480 So.2d 683 (Fla. 5th DCA 1985), review denied, 491 So.2d 279 (Fla. 1986); O'Brien v. O'Brien, 424 So.2d 970 (Fla. 3d DCA 1983); Kern v. Kern, 360 So.2d 482 (Fla. 4th DCA 1978); Condon v. Condon, 295 So.2d 681 (Fla. 1st DCA 1974). Thus if this animosity had developed between the father and child while the parents were still married, the father still would have a duty of support of his family, including Hunter.
This court has recognized that ordinarily, if a parent supports his child, he has the right to visit the child. However, this court has further recognized that there are instances where a former spouse has a duty of support when visitation would not be advisable for various "sociological, psychiatric and other reasons." Cortina v. Cortina, 108 So.2d 63, 64 (Fla. 2d DCA 1958). The Third District court has recognized that the trial court cannot condition visitation upon the payment of support, but can limit or prevent visitation in the best interest of the child. Hechler v. Hechler, 351 So.2d 1122 (Fla. 3d DCA 1977).
The trial court relied upon two cases in entering its order. We recognize that in Putnam v. Putnam, 136 Fla. 220, 186 So. 517 (1939), the supreme court affirmed a trial court's order suspending support where a sixteen-year-old child refused to comply with the terms of visitation. However, we believe subsequent changes enacted in Chapter 61, Florida Statutes have overruled the holding in Putnam.[1] We also recognize that there is language in Riley v. Connor, 509 So.2d 1177, 1177 (Fla. 5th DCA 1987), which states that "there may be conduct, on the part of a child who has reached an age of discretion of such disrespectful and contumacious character, directed toward the obligor parent," which justifies the temporary suspension of the duty of support. Unlike the Fifth District court, we are unwilling to say that conduct by a child, not shown to be orchestrated by one of the parents, should relieve a parent of his or her duty to support the child. This seems to punish only the other parent's ability to pay for that child's needs.
The all too familiar tragedy in this case is, as stated by the guardian ad litem, that "[t]his appears to be a classic case of parental strife affecting the dependent children; the children are always the losers." Instead of two parents working with one another and their child to deal with his concerns regarding visitation, we have instead the young man employing an attorney to file motions which require court resolution. And throughout this scenario, quality time between a child and his father is being lost which can never be replaced. The parents also should consider the effect this may have upon the other children.
While fully understanding the trial court's attempt to do equity in this case, we reverse and remand with directions for the trial court to order the payment of all of the suspended child support payments.
LEHAN, A.C.J., and ALTENBERND, J., concur.
NOTES
[1] The current statutes reflect that the legislature recognizes that both parents owe a duty of support to a child and that the support is not dependent upon visitation rights. See §§ 61.13(1)(a), (4)(b) and (c), Fla. Stat. (1989).