756 So.2d 188 (2000)
E.Z.P., Appellant,
v.
H.P., Jr., Appellee.
No. 3D99-1819.
District Court of Appeal of Florida, Third District.
April 5, 2000.
*189 Francis R. Gil, Aventura, for appellant.
Manuel Vazquez, Coral Gables, for appellee.
Before COPE, SHEVIN and SORONDO, JJ.
SORONDO, J.
E.Z.P. (mother), appeals from the lower court's final order directing H.P., Jr. (father), to pay all child support payments into a trust account for the benefit of H.P., III (child) and referring the case to the dependency court.[1]
In July 1989, the mother filed an affidavit alleging abuse and obtained a temporary injunction for protection against domestic violence against the father. The marriage of the parties was dissolved on January 9, 1990. The mother was named primary residential parent of their minor child, born on April 1, 1987, subject to liberal visitation rights of the father.
In November 1995, the mother alleged that the father had engaged in explicit sexual activity with another female in the presence of the child, attempted to force the child to participate and had molested the child for a period of over three years by showering together with him and masturbating. On February 2, 1996, she obtained a temporary injunction against the father for the protection of the child. The court appointed a guardian ad litem, Andrew Greenbaum, and referred the child to a psychiatrist. Investigations were conducted by HRS, the rape treatment center and the police.
The guardian reported that these agencies found no evidence of sexual abuse, stated that the child was extremely scared of his father and wanted nothing to do with him and noted that there was cause for concern for the child because it appeared that the mother was influencing him in a negative manner. The trial court has never made a determination as to whether the alleged sexual abuse occurred.
The mother moved for modification of the final judgment, seeking sole custody of the child. At a final hearing in October 1997, the court entered a permanent injunction prohibiting the father from having any contact with his child that remains in effect and awarded the mother sole parental responsibility, with conditions that the father alleges the mother has failed to follow. As part of that order, the court ordered that all parties attend individual therapy sessions and directed the child to attend therapy with Dr. Edward S. Sczechowicz, Jr.
In March 1998, the father filed an emergency motion for contempt and/or to enforce final judgment or in the alternative motion to change residential parent, which was denied in June 1998. In August 1998, another guardian ad litem, Thomas Courtney, *190 was appointed for the child. On November 23, 1998, the father filed a second emergency motion for change of custody, alleging that it was necessitated by the mother's non-compliance with court orders and repeated efforts to alienate the child from his father. The court held a hearing in January 1999. On March 25, 1999, the court entered an order denying the father's motion for change of custody but found that the mother had at every opportunity compromised the potential relationship between father and child.
On the same date, the court sua sponte issued a rule to show cause directing the mother to respond whether child support should either be terminated or paid out to a trust until such time as the child should see the father and to show cause why the case should not be referred to dependency court. After a hearing on the rule to show cause, the court modified the father's child support responsibility by ordering that he place all future payments into a trust for the child "until such time as the son should see the father or the child turns [eighteen]."
Section 61.13(4)(b), Florida Statutes (1993), provides:
When a custodial parent refuses to honor a noncustodial parent's visitation rights, the noncustodial parent shall not fail to pay any ordered child support or alimony.
In State of Florida, Department of Health and Rehabilitative Services v. Sandidge, 651 So.2d 1261 (Fla. 1st DCA 1995), the Court concluded that:
[T]he Florida Legislature has made it "clear that visitation rights and the obligation to provide child support are unrelated and that the inability to exercise visitation rights does not relieve the non-custodial parent from the obligation to pay child support."
Id. at 1262 (quoting State of Fla., Dep't of HRS v. Lemaster, 596 So.2d 1117, 1118 (Fla. 2d DCA 1992)). We agree.[2]
In the present case, the father has no visitation rights. Indeed he has been permanently enjoined from having any contact with his minor child. Nevertheless, the trial court has ordered that the child receive counseling with an eye towards ultimately awarding visitation with the father. Because the trial judge is apparently convinced that the mother is interfering with this goal by poisoning the child against his father, she entered the order under review which diverts all child support payments into a trust. We conclude that the order violates the clear dictates of section 61.13(4)(b) and reverse.
On the day it entered its order, the trial court additionally referred this case to the dependency court for an assessment on the question of whether the mother's efforts to alienate the child from his father constituted child abuse. The trial judge apparently relied on section 39.201, Florida Statutes (1999), which reads, in pertinent part, as follows:
(1) Any person, including, but not limited to, any:
(g) Judge,
who knows, or has reasonable cause to suspect, that a child is abused, abandoned, or neglected by a parent, legal custodian, caregiver, or other person responsible for the child's welfare shall report such knowledge or suspicion to the department in the manner prescribed in subsection (2).
The mother also appeals this portion of the order arguing that there was no evidence of abuse to justify the referral. Because section 39.201 does not require any specific *191 predicate for such a referral, we do not believe that the trial court's referral is reviewable in this case.
We are troubled by the fact that although this case has been in existence for several years there has yet to be a judicial determination on the issue of the alleged sexual abuse. Accordingly, on remand the trial court will first conduct an evidentiary hearing to determine the veracity of the allegations of sexual misconduct by the father. Once the court determines whether the allegations are true or not, the court will then determine whether visitation with the father is in the best interest of the child. If the court still believes that visitation is in the child's best interest, it may then address the issue of the mother's alleged efforts to alienate the child from his father. This determination will be made only after a full evidentiary hearing on the matter. If the court still believes that the mother has been thwarting the court's efforts to re-unite the child and his father, it may then take such permissible disciplinary measures as may be necessary to enforce its orders.
Reversed and remanded with instructions.
NOTES
[1] Because of the sensitive nature of the allegations in this case and the minor child's present age, we have decided to protect the identities of the parties and minor child.
[2] We note the existence of Putnam v. Putnam, 136 Fla. 220, 186 So. 517 (1939), where the Florida Supreme Court affirmed a trial court's order suspending support for a sixteen-year-old child where the child refused to comply with the terms of visitation. We agree with the Second District Court of Appeal's decision in Carroll v. Carroll, 593 So.2d 1131, 1133 (Fla. 2d DCA 1992), that subsequent changes in chapter 61, Florida Statutes, have overruled Putnam.