907 So.2d 1270 (2005)
Lillian SPALDING, Appellant,
v.
George SPALDING, Appellee.
No. 5D04-2324.
District Court of Appeal of Florida, Fifth District.
August 5, 2005.
*1271 Lillian Spalding, Gainesville, pro se.
A.J. Rohe, III, of Law Office of A.J. Rohe, III, Tavares, for Appellee.
THOMPSON, J.
Lillian Spalding ("the Former Wife") challenges the trial court's order suspending George Spalding's ("the Former Husband") child support obligation and abrogating his duty to maintain a life insurance policy to secure the support obligation unless a meaningful relationship between the Former Husband and child is established. We reverse and remand with directions.
The Spaldings obtained a divorce in Massachusetts in 2001, after agreeing to terms memorialized by a settlement agreement incorporated into the final judgment. Their daughter's emancipation was contingent on several factors and was not automatic at age 18. The final judgment contained provisions to contribute toward her college educational expenses, including room and board, until she reached age 23 so long as she remained enrolled as a full-time student.[1] The Spaldings agreed to contribute to these expenses "as hereinafter defined in accordance with their respective *1272 financial abilities, that are not otherwise covered by grants, loans, scholarships" and the like.
The Massachusetts trial court accepted the Former Husband's written agreement not to exercise visitation with the child.[2] The final judgment ordered the Former Husband to include arrearages in the child support payment.[3]
In 2002, pursuant to the Uniform Interstate Family Support Act ("UIFSA")[4], the Former Husband filed a notice of registration of foreign judgment of divorce in Florida and a petition for modification of child support alleging a substantial change in circumstances. Florida and Massachusetts are signatories to the UIFSA, and thus the Former Husband is bound by its terms. Because Massachusetts is no longer the residence of the obligor, obligee, or the child,[5] and the court has modified the registered foreign support order, this state has assumed continuing exclusive jurisdiction. See § 88.2051(1), Fla. Stat. (2003). For purposes of the choice of law provisions of section 88.6041, of UIFSA, once a judgment is registered and modified in another state, that state becomes the issuing state and the forum state's law governs modification of the support order. The trial court has jurisdiction to enforce and modify the final judgment and shall apply the procedural and substantive law of this state to the proceeding. § 88.6131.
Following registration of the support order in this state, the Spaldings agreed and the court ordered a temporary reduction in child support in April 2003. Their agreement included a provision to adjust child support based on additional documentation. In June 2003, the court again adjusted the child support payment. Subsequently, the Former Husband sought to suspend child support based solely upon the authority of Riley v. Connor, 509 So.2d 1177 (Fla. 5th DCA 1987). In Riley, this court reversed the trial court's suspension of the father's duty to pay support for his dependent son until "a loving father-son relationship has been reestablished with the complete cooperation and full participation by the son" as "too vague and indefinite." Id. at 1178. The trial court was ordered to set an amount for the father's child support obligation. Id. By way of dictum, this court declared:
Without attempting to delineate it, we recognize there may be conduct, on the part of a child who has reached an age of discretion of such disrespectful and contumacious character, directed toward the obligor parent, which justifies the trial court's coercive suspension of the obligor parent's duty of support during the time of the child's willful persistence in such conduct. Id.

In this case, the trial court learned at the hearing that the daughter was refusing *1273 to communicate with the Former Husband or to have any relationship with him. The Former Husband argued that his child support obligation should be suspended based on the Riley decision and equitable principles. The court advised the Former Wife that there was no right to child support after high school for a child. Moreover, the trial court stated that the only reason there was child support in this case was because of "the verbiage of the judgment of this divorce in Massachusetts." The trial court further announced:
The duty is coming out of a contract. And as a contract, I'm going to presume that she has at least a reasonable relationship with her father. So she's got till May to reestablish a reasonable relationship with her father. And assuming she does so and acts civil and speaks with him on a regular basis, fine. If she continues to have no contact with him, then I'm not going to make him continue to pay child support. He is obligated till May until she's emancipated under Florida law.
The trial court's order entered in January 2004, described the Former Husband's obligation to pay child support beyond the child's maturity  once she graduated from high school  as "merely a contractual obligation and not a legal one." In May 2004, the Former Husband filed a motion to enforce the order suspending child support. Appearing pro se, the Former Wife argued that because the child support obligation was strictly contractual, the trial court was unable to modify the agreement if it was unambiguous. The Former Wife also advised the trial court that the language in Riley was dictum. She argued that the Second District had criticized Riley in Carroll v. Carroll, 593 So.2d 1131, 1133 (Fla. 2d DCA 1992), where the court declared that it was "unwilling to say that conduct by a child, not shown to be orchestrated by one of the parents, should relieve a parent of his or her duty to support the child." Id. Here, despite the Former Wife's argument, the trial court ordered that the Former Husband's child support cease immediately unless, after a duly noticed hearing, the court finds that the child "is having a meaningful relationship with the Former Husband." The trial court went on to construe a meaningful relationship "to be normal telephone communication and e-mail communication with the Former Husband so that they can begin face-to-face contact with each other." It also abrogated any requirement that he maintain life insurance to secure child support. In the order, the trial court expressly criticized the Former Wife's misrepresentation that the Riley decision was not valid law.
Because the Massachusetts judgment is to be treated as a Florida final judgment, see section 88.6041, we review de novo the wording and meaning of the marital settlement agreement as incorporated in the Massachusetts final judgment. See McIlmoil v. McIlmoil, 784 So.2d 557, 561 (Fla. 1st DCA 2001) (holding that the final judgment that incorporated the parties' marital settlement agreement is to be interpreted like any other contract and "the unambiguous language is to be given a realistic interpretation based on the plain, everyday meaning conveyed by the words.").
There are two separate and distinct legal sources for the obligation of child support  statute and contract. Zolonz v. Zolonz, 659 So.2d 451, 452 (Fla. 4th DCA 1995) (citing Dep't of Health & Rehabilitative Servs. v. Holland, 602 So.2d 652 (Fla. *1274 5th DCA 1992)). For minor children and children post-majority who are dependent because of mental or physical incapacity, the state imposes a duty of child support. See §§ 61.13(1)(a); 743.07(2), Fla. Stat. (2003). Contracts between the parents regarding the support of their minor children are subject to the plenary power of the state to control and regulate. Zolonz, 659 So.2d at 452. However, contracts between parents regarding the support of their adult children are not subject to the state's plenary power. Id. at 452-53. Those provisions are governed solely by contract, and the judge has no power to rewrite the agreement as to the amount of the adult child's support. Id. at 453. As recognized by the trial court, the settlement agreement provision in this case is strictly a contractual obligation. See Nicoletti v. Nicoletti, 901 So.2d 290, 292 (Fla. 2d DCA 2005).
First, we look to the language of the marital settlement agreement incorporated in the Massachusetts final judgment regarding visitation. In Exhibit A of the separation agreement at paragraph II, the parties agreed: "There shall be no visitation." (e.s.) The language is clear and unambiguous in either legal or lay terms. The agreement was supported by expert testimony that it would not be in the best interest of the child to visit with the Former Husband unless the child initiated the visitation. Further, the Former Husband agreed to pay child support, including educational expenses, until the child reached age 23, with no requirement that support was contingent upon visitation. Having reviewed the plain language of the final judgment, we see no basis for the trial court's order.
Second, two categories of child support payments are present in this case: current child support payments and a vested child support arrearage. Unpaid child support payments constitute a vested right not subject to modification and the court has no power, absent compelling circumstances, to cancel or retrospectively reduce support provided by the divorce decree regarding past due installments. Teta v. Teta, 297 So.2d 642 (Fla. 1st DCA 1974). Here, the only basis for suspending the Former Husband's obligation to pay all child support, including the substantial child support arrearage, was that the child had not established a meaningful relationship with the Former Husband.
Third, regarding the current child support obligation, the Former Husband never produced evidence to support any change to their agreement to contribute to support. The trial court erred in suspending child support and altering the agreement. The trial court has written into the Spaldings' contract an obligation on the child's part to foster a meaningful relationship with the father despite the Massachusetts' order of no contact initiated solely by the father. More importantly, the record supports the court's adoption of this agreement in light of the permanent domestic violence injunction that prohibited contact unless initiated by the child. A Massachusetts psychologist found that it would not be in the best interest of the child to have contact with the father. Further, the Former Husband never sought visitation with the child.
The settlement agreement provided that both parents contribute to the child's college expenses "as hereinafter defined in accordance with their respective financial abilities." Contracts between parents regarding the support of their adult children are solely governed by the contracts of the parties. Zolonz, 659 So.2d *1275 at 453. A parent's obligation to pay college expenses is not child support, but rather a contractual obligation arising from the marital settlement agreement. Madson v. Madson, 636 So.2d 759, 760-61 (Fla. 2d DCA 1994). An agreement to pay college expenses is a contract subject to interpretation like any other contract. Bingemann v. Bingemann, 551 So.2d 1228, 1231 (Fla. 1st DCA 1989). The court may not remake an agreement between the parties; if there is any ambiguity, the agreement will be interpreted in accordance with the best interest of the children concerned. Id. Because the Former Husband seeks to eliminate altogether his child support obligation, he would bear a heavy burden because the amount of child support was based upon an agreement. See Overbey v. Overbey, 698 So.2d 811, 814 (Fla.1997); Deatherage v. Deatherage, 395 So.2d 1169, 1170 (Fla. 5th DCA 1981). We do not comment on the meaning of or the parties' intent concerning the language "respective financial abilities" in the agreement's calculation of college expenses.
The court erred in suspending all child support and abrogating the requirement that the Former Husband maintain a life insurance policy to secure the support obligation. The Former Husband offered no evidence to support the suspension of child support payments other than his desire for a meaningful relationship with his child. Thus, we reverse and remand with instructions that the original agreement, as modified, be enforced without the requirement that the Former Husband and child establish a meaningful relationship.
REVERSED and REMANDED with instructions.
PETERSON and SAWAYA, JJ., concur.
NOTES
[1] Exhibit A-2 of the agreement reads:

For the purpose of this Agreement, emancipation of the minor child shall mean the earliest of one of the following to occur:
a. death of the child;
b. marriage of the child;
c. lawful entry of child into the military service of the United States;
d. full-time employment excluding summers and vacations while still a full-time student;
e. the age of 18 years except that (1) if a child attains the age of 18 and still attends high school, then such child shall not be deemed to be emancipated until graduation from high school or termination of enrollment in high school; or (2) if the child when between the ages of 18 and 21 continues to reside with the custodial parent and is dependent upon his/her parents for support, and maintenance or otherwise comes within the criteria established for continued support by M.G.L. c. 208, Section 28, emancipation shall not be deemed to have occurred until the child attains the age of 21; or (3) if the child attends a full-time post-high school educational institutional leading to the granting of a degree then emancipation shall occur upon the age of 23, upon the completion of such post high school education or the termination of enrollment at said educational institution except as provided in section (2); whichever occurs first.
Exhibit A-3 of the agreement reads:
The term "educational expenses" shall include, without limitation, tutoring and review courses for entrance exams; application and testing fees; interviewing expenses; tuition, room and board; cost associated with off-campus residence; computer fees; required books, materials and supplies; school and activity fees; reasonable transportation costs to and from school and including semester breaks and vacation periods; and any and all other incidental expenses and charges that appear on the tuition bill issued by the educational institution and are required for the child's attendance at said institution.
[2] The record includes evidence of a permanent domestic violence injunction against the Former Husband prohibiting contact with the Former Wife and her parents and limiting contact with the child unless she initiated the contact. Also, the Massachusetts Guardian Ad Litem reported that a psychologist had conducted an evaluation and concluded that any contact by the father with the daughter was harmful and damaging to the child.
[3] The Former Husband agreed the child support arrearage was $19,216.54.
[4] Chapter 88, Florida Statutes (2003).
[5] The Former wife and child are residents of Florida. The Former Husband was a resident of New Hampshire or Florida at the time he filed his motion.