931 So.2d 236 (2006)
Jerry RODGERS, Appellant,
v.
Cheryl REED, f/k/a Cheryl Rodgers, etc., Appellee.
No. 5D05-694.
District Court of Appeal of Florida, Fifth District.
June 16, 2006.
*237 Andrew G. Natelson, Flagler Beach, for Appellant.
No Appearance for Appellee.
SAWAYA, J.
The first issue we must resolve is whether the child support provision of the final judgment of dissolution of the parties' marriage orders payment of a lump sum award, not a per child award, requiring the same amount be paid by Jerry Rodgers, the former husband, regardless of how many children had reached adulthood. The second issue is whether it was proper to impose a lien on any future worker's compensation settlement Rodgers may receive when the former wife, Cheryl Reed, had not filed any pleading seeking that relief. The order we review that necessarily frames these issues is the order establishing the amount of child support arrearage Rodgers owes for his three children now that all have attained their majority. We note, parenthetically, that the former wife has not provided us with a brief.
The 1994 final dissolution of marriage judgment awarded the former wife primary physical custody of all three children born of the marriage and set the amount of support arrearage at $5000. As to child support, the poorly-drafted and ambiguous provisions of that part of the judgment state:
CHILD SUPPORT: That the party obligated to pay child support shall pay to the party entitled to receive the sum of $212.00 per week for the support of the minor child(ren).
 NAME OF MINOR(S) BIRTHDATE(S)
 Sheila Rodgers February 27, 1978
 Andrea Rodgers October 18, 1979
 Dewayne Rodgers February 5, 1984
Child support payments shall continue until the death of said minor child, the valid marriage of the child, the lawful entry of the child into the military service of the United States for a continuous period of time of one year or more, or until attainment of said minor child's 18th birthday, unless said child is at the time enrolled in high school on a full time basis, and living at home, in which case support shall continue until the child graduates high school.
On January 9, 2003, Rodgers filed a Motion to Terminate Child Support and Income Deduction Order premised on his *238 assertion that rather than a lump sum support award, he was actually paying $70.76 per child per week and thus, as each child either left home or attained his or her majority, the amount he owed was reduced by $70.76. In the motion, Rodgers states that it was inequitable to require him to pay support to the former wife for Andrea when Andrea had moved to Virginia four months after the final judgment was rendered. Also, he claimed that his obligation of support for the oldest child, Sheila, ended when she turned 18 on February 27, 1996, leaving him to pay support for only Dewayne until February 5, 2002. According to Rodgers' calculations, he should have paid the following:
A. $5,000 arrearage owed as of November 18, 1994.
B. $3,180 child support based on $212.00 per week for the period beginning November 18, 1994 through March 1, 1995.
C. $7,309.83 child support based on $141.33 per week from the period beginning March 1, 1995 to February 27, 1996.
D. $21,824.87 child support based on $70.67 per week from the period beginning February 27, 1996 to February 5, 2002.
The total owed, according to this calculation, was $37,314.70. Rodgers claimed that he had actually paid $43,054.66.
Rodgers, who is currently disabled and unable to work, receives $640 per month in disability payments. His motion explains that his disability payment is reduced by an income deduction order rendered by the state of California, which deducts $122 per week from his disability check for child support. He reasoned that because all children are now over 18, the trial court "should find that the former husband has fully satisfied his child support obligation and terminate his child support obligation and current income deduction order."
A child support enforcement hearing officer heard Rodgers' motion. It was at this hearing that the former wife's attorney asserted an arrearage of almost $40,000 and asked the hearing officer for a lien on any lump sum benefits that Rodgers might receive in settlement of the worker's compensation suit he was pursuing. There was no objection to the lien request from Rodgers' attorney. The hearing officer entered a recommended order establishing the arrearage at $20,485.83 as of February 2, 2005, to be paid at $50 per month. The order also recommended that there be a lien against any lump sum payment due to Rodgers from his worker's compensation case. The trial court approved and adopted the recommended order in all respects.
Because the first issue we must resolve involves the construction of ambiguous provisions of a final judgment, it is appropriate for us to apply the de novo standard of review in our search for the correct resolution. McCann v. Walker, 852 So.2d 366 (Fla. 5th DCA 2003); see also Spalding v. Spalding, 907 So.2d 1270 (Fla. 5th DCA 2005); Roque v. Paskow, 812 So.2d 500, 503 (Fla. 4th DCA 2002) ("Finally, the construction of a final judgment presents a question of law for the court, see Boynton v. Canal Auth., 311 So.2d 412, 415 (Fla. 1st DCA 1975), and we may review it de novo on appeal.").
Rodgers reads the pertinent provisions of the 1994 final judgment as a per child order, while the hearing officer interpreted it as a lump sum award. If the hearing officer was correct, then Rodgers' failure to seek modification of his support order prior to the emancipation of all three children left nothing for the hearing officer to do but enforce the order as written and set the amount of arrearage based upon *239 that amount. We are directed to this conclusion by a general rule which provides that "[w]hen the child support provision fails to allocate the amount of support attributable to each child, the trial court cannot retroactively terminate child support before the date the petitioner requested such relief." Florida Dep't of Revenue ex rel. Wilson v. Wilson, 782 So.2d 952, 954 (Fla. 2d DCA 2001); see also Krause v. Krause, 793 So.2d 75, 77 (Fla. 2d DCA 2001); Dep't of Revenue on Behalf of Hall v. Hall, 699 So.2d 1036, 1038 (Fla. 5th DCA 1997); State, Dep't of Revenue, Child Support Enforcement v. Segrera, 661 So.2d 922, 923 (Fla. 3d DCA 1995); Puglia v. Puglia, 600 So.2d 484, 485 (Fla. 3d DCA 1992).
Hence, if the child support order awards a lump sum for all of the children, Rodgers' attempt to reduce or modify the amount after the children reached adulthood is futile. Therefore, we must determine whether Rodgers is correct in arguing that the award is a per child award. We believe that the decision in Florida Department of Revenue ex rel. McClung v. McClung, 760 So.2d 244 (Fla. 3d DCA 2000), is analogous to the instant case. There, the court held that in reading all provisions of the support agreement together, it had to conclude that a per child award was intended. The McClungs' agreement provided in part:
15. The Husband shall pay to the Wife, for support and maintenance of the minor children of the parties, the sum of $400.00 per month.
* * *
18. The support rights of each child shall terminate and the obligation of the husband to pay support for each child shall cease upon occurance [sic] of any one of the following:
a) The death of the child.
b) Attainment of his eighteenth birthday.
c) The valid marriage of the child.
d) The lawful entry of the child into the military service of the United States.
Id. at 245. The appellate court agreed with the trial court that indeed, the award was a per child, not lump sum, award, explaining:
Based upon our de novo review of the parties' agreement, we believe that paragraphs 15 and 18 must be construed together in order to give full effect to each. See Durham Tropical Land Corp. v. Sun Garden Sales Co., 106 Fla. 429, 138 So. 21 (1931). When that is done, we conclude, as did the trial court, that the parties intended for the child support payments to be allocated between each child such that upon the occurrence of one of the qualifying events listed in paragraph 18, the former husband would only be obligated to pay the former wife $200.00 per month for the remaining child. We are compelled to reach this conclusion because paragraph 18 speaks in terms of the former husband's financial obligation to each child individually as opposed to the children collectively. For that reason, the cases relied upon by the Department are readily distinguishable. See, e.g., [State, Dept. of Health & Rehabilitative Services, Child Support Enforcement v.] Whaley, 624 So.2d [367] at 367 (child support unallocated where parties agreed that former husband would pay former wife $1,500 per month as child support for the parties' two children and agreement further provided that "said child support payments shall continue until the youngest child shall have attained the age of 18 years, dies, marries or becomes emancipated."); [State, Dept. of Health and Rehabilitative Services, *240 Office of Child Support Enforcement ex rel. Worthy v.] Carwell, 524 So.2d [484] at 484 (trial court erred in modifying child support following "the death of one of two children for whom the father had acknowledged paternity where the final judgment of paternity specified that the child support would continue until the minor children die, marry, become self-supporting or emancipated"); [Hammond v.] Hammond, 492 So.2d [837] at 837 (child support unallocated where the final judgment of dissolution ordered the former husband to pay "`as child support the sum of $182.00 per week, ... for the support and maintenance of the minor children... until such time as both minor children become 18 years of age[.]'").
Id. at 245-46 (footnotes omitted).
Rodgers argues that just as in McClung, it is undeniable that the first paragraph of his own support order is a lump sum award; however, when the following paragraph is read in conjunction with the first paragraph, it is clear the intent was for the child support to be a per child award, and thus the amount owed would decrease upon the occurrence of any of the listed events in each child's life. We agree with Rodgers' analysis. The second paragraph of the instant order speaks in terms of "said child" and lists the qualifying events for the termination of support for "said child." Coming as it does after a list of each child's name and birth date, the reference to "said child" is a reference to each individual child listed in the first paragraph; otherwise, the second paragraph would refer to "said children." In order to give effect to the second paragraph, any one of the listed events occurring in the life of any one of Rodgers' three children would trigger the conclusion of support for that child. Accordingly, we conclude that reversal and remand for a recalculation of arrearages is necessary.
The second issue  imposition of a lien on any future worker's compensation benefits Rodgers may receive  presents a question of law that we review de novo. Generally, imposition of a lien against the prospective proceeds of a parent's worker's compensation settlement, for purposes of satisfying that parent's child support arrearage, is an appropriate device to ensure that the proceeds are not improperly diverted. Dep't of Revenue ex rel. Springer v. Springer, 800 So.2d 700, 701-02 (Fla. 5th DCA 2001); see also Bryant v. Bryant, 621 So.2d 574, 576 (Fla. 2d DCA 1993). The only caveat is the enforcement of the lien, which, this court observed in Springer, must accommodate both the child support needs and the needs of the recipient of the settlement.
It appears that the lien provision recommended by the hearing officer in the instant case, and adopted by the trial court, does not take into consideration Rodgers' need for any of the proceeds. It provides:
There shall be a lien against any lump sum payment due to Respondent resulting from his injury, up to the full amount of the child support arrearage then due. No funds shall be disbursed to Respondent unless the arrearage has been paid in full, or upon further order of the court.
The lien language acts as a complete bar to Rodgers' ability to receive any of the proceeds unless and until the arrearage is satisfied, but the provision does contain an "out" by including language allowing the court to revisit the issue and enter another order. Presumably, once the settlement is realized, Rodgers could move the court to enforce the lien in an equitable manner according to the circumstances at the time.
Rodgers argues that the hearing officer erred in including a lien provision in *241 the arrearage determination because after he filed his motion to terminate support, the former wife never filed a responsive pleading requesting a lien and, hence, never placed him on notice that she was seeking that relief. Unfortunately, Rodgers failed to preserve this issue inasmuch as he failed to object to the former wife's request for a lien when she made it at the hearing.
Nevertheless, because the amount of the arrearage needs to be recalculated, we believe it would be expedient for the trial court to clarify the lien provision of the order to require an evidentiary hearing on the enforcement of the lien if and when the time comes. Rodgers' almost dire financial situation was not challenged by the former wife, and it is apparent that he will require at least a portion of the proceeds for his own support. Under the undisputed facts, it would be inequitable to require that Rodgers fully satisfy the arrearage before receiving any portion of the balance of the settlement proceeds.
We reverse the order under review and remand for recalculation of the arrearage and a clarification of the lien provision. We note that upon recalculation of the arrearage, the trial court may conclude that no such lien provision is necessary.
REVERSED and REMANDED.
PLEUS, C.J. and PALMER, J., concur.