DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**THE ALLEGRO AT BOYNTON BEACH, L.L.C.,** a Florida Limited Liability
Company,
Appellant,

v.

**C. BRUCE PEARSON,** an Individual, and **OLSON LAND PARTNERS,
LLC,**
Appellees.

No. 4D18-3387

[November 27, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm
Beach County; Cymonie Rowe, Judge; L.T. Case No. 50-2015-CA-007970-
XXXX-MB.

Wade McK. Hampton of Duss, Kenney, Safer, Hampton & Joos, P.A.,
Jacksonville, for appellant.

Ronald M. Gaché and Scott A. Simon of Shapiro, Fishman & Gaché,
LLP, Boca Raton, for appellee C. Bruce Pearson.

CIKLIN, J.

In the second appeal pertaining to this litigation, the Allegro at Boynton
Beach, LLC ("Allegro") appeals a final judgment entered in favor of the
defendant below, C. Bruce Pearson ("the Seller"). The final judgment
incorporates an order denying Allegro's motion for summary judgment and
granting the Seller's renewed cross motion for summary judgment. We
reject both of the issues Allegro raises on appeal and we affirm.

## I.    FACTS

This appeal arises from an action involving a contractual right of first
refusal to purchase real property ("the ROFR"). The ROFR was assigned
to Allegro, which operates a senior housing community on an adjacent
parcel of land.

Language in the contract governing the ROFR provides that, prior to

the Seller's transfer of the real property (the "Refusal Property"), the Seller shall deliver a copy of the third party sale contract to Allegro. Allegro "shall have the right to elect, within ten (10) days after its receipt of the [third party sale contract], to purchase the Refusal Property at the same price and upon the same terms and conditions as those contained in the [third party sale contract] by giving written notice to Seller within the ten (10) day period."

The contract also provides that notices shall be delivered by "mail, personal delivery or electronic media" and that "[a]ny notice, document or item delivered to or received by an attorney . . . representing a party will be as effective as if delivered to or by that party." Further, "[i]f for any reason . . . Seller fails, refuses or neglects to perform this Contract, [Allegro] may choose to receive a return of [Allegro's] deposit. . . or to seek specific performance. . . ."

The Seller first found a buyer for the Refusal Property, Cameron General Contractors, Inc., in September 2013 for the sale price of $2.5 million. As it was permitted to do, Allegro exercised its ROFR to purchase the property under the same terms and conditions as the Cameron Contract.

In September 2014, Allegro terminated its contract to purchase the Refusal Property, stating that "the current development environment in Palm Beach County and in Boynton Beach in particular makes the likely path of any approval process of the [Refusal] Property extremely lengthy as well as both time and cost prohibitive," and demanded return of its earnest money. Litigation ensued and ended in settlement without the sale of the Refusal Property.

Thereafter, in May 2015, the Seller procured yet another buyer and entered into a contract with Olson Land Partners, LLC ("Olson") for $3.75 million. On June 12 and 24, 2015, Allegro demanded a copy of the tentative contract with Olson pursuant to the terms of the ROFR (the "Olson Contract"). The Seller advised that he would not forward the contract and that it was the Seller's "position that the right of first refusal was effectively terminated upon Allegro's decline last September to close on the last contract they had on the subject property."

Two days later, in July 2015, Allegro filed suit, alleging the following counts and seeking the following remedies: (I) breach of contract; (II) declaratory judgment that the ROFR is valid, binding, and enforceable, that the Seller is in breach, and that Allegro is entitled to enforce the ROFR; (III) injunctive relief to compel the Seller to perform under the

2

ROFR, provide a copy of the Olson contract to Allegro, and comply with the ROFR; and (IV) specific performance: "judgment requiring the [Seller] to perform the ROFR . . . ."

Allegro then received the Olson Contract through counsel as an attachment to Olson's motion to intervene filed on December 23, 2015 and through document production from the Seller on January 8, 2016.

The Seller asserted several counterclaims against Allegro, including a counterclaim for declaratory relief seeking judgment finding that the ROFR is no longer in effect based on Allegro's receipt of the Olson Contract and failure to timely exercise its rights. In support of his claims, the Seller pointed out that Allegro received a copy of the Olson Contract through litigation and "failed to timely exercise any rights it might still have under the ROFR." The Seller attached a copy of the Olson Contract to his answer, affirmative defenses, and counterclaims.

Allegro moved for partial summary judgment on counts I and II and the Seller moved for summary judgment on all of his counts. The trial court denied the Seller's motion for summary judgment but granted Allegro's motion for summary judgment. In ruling on the motions, the trial court found that the ROFR remains in effect, that the Seller anticipatorily breached the ROFR in his letter stating his position that the ROFR was effectively terminated, and that, because of the anticipatory breach, "the Court need not reach Seller's argument that the Olson Agreement was delivered in accordance with the ROFR during discovery."

Thereafter, Allegro filed a "Motion for Entry of Final Judgment of Specific Performance Upon Election of Remedy," seeking to have the trial court direct the Seller to deliver the Olson Contract pursuant to the terms of the ROFR. As an exhibit to the motion, Allegro attached a revised version of the Olson Contract that substitutes Allegro's name for Olson's.

The trial court denied Allegro's motion without explanation. It granted a motion for summary judgment filed by Olson, determining that Allegro made an election of remedies when it moved for recovery on breach of the ROFR, and, therefore, Allegro may not seek specific performance. The first appeal ensued.

*Allegro's First Appeal*

On appeal, in *Allegro at Boynton Beach, L.L.C. v. Pearson*, 227 So. 3d 1288, 1289 (Fla. 4th DCA 2017), this court ultimately determined that Allegro did not make an election of remedies that prevented it from seeking

3

specific performance, and also determined as follows:

> Two days [after the entry of the order on the parties' motions for summary judgment], in an attempt to evade Allegro's pursuit of its right of first refusal, [Olson] terminated the first agreement to purchase the parcel, and then signed a new agreement with the Seller to purchase the same parcel— this time at a considerably higher purchase price with a shortened inspection period. The Seller delivered the new agreement to Allegro giving it ten days to exercise its right of first refusal.
>
> . . . .
>
> When an owner enters into a contract for sale, a pre-existing right of first refusal is "converted into an irrevocable option to purchase." *Vorpe v. Key Island, Inc.*, 374 So. 2d 1035, 1037 (Fla. 2d DCA 1979); *see* 1 Williston on Contracts, §§ 5:15, 5:16, 5:18 (4th ed. May 2017). Once a holder's right of first refusal ripens into an option, the option is not affected by termination of the underlying contract. *Vorpe*, 374 So. 2d at 1037; *see also King v. Hall*, 306 So. 2d 171, 173 (Fla. 1st DCA 1975).
>
> Here, once the Seller entered into the purchase agreement with [Olson], Allegro's right of first refusal was converted into an irrevocable option to purchase. [Olson]'s subsequent termination of the purchase agreement did not affect Allegro's option. The trial court erred in finding that the termination of the purchase agreement divested Allegro of its option to exercise its right of first refusal.
>
> We reverse the trial court's grant of summary judgment to [Olson] and remand for further proceedings.

*Id.* at 1289-91. In a footnote, this court explained:

> We find no error in the denial of Allegro's motion [seeking specific performance]. The order granting Allegro's motion for summary judgment established only that the Seller breached the parties' agreement. If Allegro chooses to pursue the remedy of specific performance, it bears the evidentiary burden of establishing its entitlement to this equitable remedy. *See Sunbank, N.A. v. Retirement Facility at Palm–Aire,*

4

*Ltd.*, 698 So. 2d 392 (Fla. 4th DCA 1997).

*Id.* at 1289 n.1.

Following the appeal, Allegro filed a "Motion for Summary Judgment as to Plaintiff's Entitlement to the Remedy of Specific Performance." Allegro sought "the entry of summary judgment of specific performance as a matter of law, requiring Pearson to perform under the Original Contract and ROFR, by delivering the Olson [Contract] to Allegro. . . ."

The Seller then filed a renewed cross motion for final summary judgment on counts III and IV of Allegro's complaint (injunctive relief to compel the Seller to perform under ROFR by providing a copy of the Olson Contract and specific performance) and on his counterclaim for declaratory judgment. Therein, he asserted that Allegro's request for an order requiring that he deliver the Olson contract was moot because he had, on several occasions, previously delivered the contract and Allegro repeatedly failed to exercise the ROFR.

After a hearing, the trial court entered an order denying Allegro's motion and granting the Seller's cross motion, reasoning as follows:

> The Court finds that *[the Seller] delivered a copy of the [Olson] Contract on January 8, 2016,* when [the Seller]'s attorneys produced documents in response to discovery. That same day, Allegro's attorneys acknowledged receipt of that document production. Additionally, on January 25, 2016, when filing the Amended Answer, Affirmative Defenses and Counterclaim delivered another copy of the Olson Contract when attaching it as an exhibit thereto.
>
> * * * *
>
> The court finds that [the Seller] has satisfied the delivery requirement under the ROFR by providing Allegro with a copy of the Olson Contract, both as part of its document production and as an exhibit to its operative pleading.
>
> The fact that [the Seller] delivered the Olson Contract to Allegro during the course of litigation is immaterial, so long as Allegro received it, which it did. See, *Vorpe v. Key Island, Inc.*, 374 So. 2d 1035, 1036 (Fla. 2nd DCA 1979). To hold otherwise, and require that [the Seller] deliver the Olson Contract to Allegro in a certain manner, or at a certain time,

other than what is written in the parties' agreement, would be the equivalent of rewriting the parties' agreement by adding extraneous conditions to it. Thus, "[i]t is the substance and not the form which is controlling." See *Taylor v. Lutz*, 134 So. 3d 1146, 1148 (Fla. 1st DCA 2014)[.]

In the instant case, after receipt of the Olson Contract, Allegro failed to timely elect to purchase the Refusal Property at the same price and upon the same terms and conditions as those contained in the Refusal Contract, by giving written notice to Seller within the ten-day period. Allegro also failed to timely tender or otherwise pay the earnest money deposit required under the Olson Contract. The Court does not find that Allegro anticipatorily breached the contract.

Accordingly, [the Seller], by delivering a copy of the Olson Contract to Allegro, has fully complied with his obligations under the ROFR and Allegro, by failing to timely elect to purchase the Refusal Property after its receipt of the Olson Contract, has failed to exercise any rights it might have under the ROFR.

(Emphasis added) (footnote omitted).

Thereafter, the trial court entered an order granting final judgment in favor of the Seller, in which it adopted the reasoning in the Order on Motions for Summary Judgment.

## II.   ANALYSIS

*Allegro's Second Appeal*

Allegro appeals again arguing initially that the trial court erred in denying Allegro's motion for summary judgment on the remedy of specific performance. We find that Allegro has waived its right to relief with respect to the denial of its motion for summary judgment. As we explained in *Congress Park Office Condos II, LLC v. First-Citizens Bank & Trust Co.*, 105 So. 3d 602 (Fla. 4th DCA 2013):

"[W]hen a decree of the trial court is brought . . . on appeal the duty rests upon the appealing party to make error clearly appear." *Lynn v. City of Fort Lauderdale*, 81 So. 2d 511, 513 (Fla. 1955) (citing *F E C News Co. v. Pearce*, 58 So. 2d 843 (Fla. 1952)). To this end,

> [a]n appellant does not discharge this duty by merely posing a question with an accompanying assertion that it was improperly answered in the court below and then dumping the matter into the lap of the appellate court for decision. Under such circumstances it must be held . . . that [the appellate court is] under no duty to answer the question.

> *Id.*

*Id.* at 610 (second & third alterations in original); *see also Polyglycoat Corp. v. Hirsch Distributors, Inc.*, 442 So. 2d 958, 960 (Fla. 4th DCA 1983) ("It is the duty of counsel to prepare appellate briefs so as to acquaint the Court with the material facts, the points of law involved, and the legal arguments supporting the positions of the respective parties. When points, positions, facts and supporting authorities are omitted from the brief, a court is entitled to believe that such are waived, abandoned, or deemed by counsel to be unworthy." (citation omitted)).

Allegro cites a single quote from a single case in support of this issue, *Beefy Trail, Inc. v. Beefy King Int'l, Inc.*, 267 So. 2d 853 (Fla. 4th DCA 1972), which, as it relates to the case at hand, stands for the very broad proposition that specific performance is a judicial remedy available against one who has breached a contract, but otherwise states that the opinion is "not concerned with" the remedy of specific performance. *Id.* at 856. Other than this one citation, Allegro simply regurgitates facts from prior proceedings rather than providing any type of meaningful analysis. Accordingly, we find this issue to be waived.

Allegro next argues that the trial court erred in granting the Seller's cross motion for summary judgment, therein finding the Seller had delivered the contract by providing copies in discovery. Allegro contends that the finding is (a) contradictory to the findings of the first summary judgment order, (b) in conflict with Florida law on delivery, and (c) in conflict with Florida law mandating that a party is relieved of further performance upon the other party's breach. We disagree.

An order granting or denying summary judgment is reviewed de novo. *See Volusia Cty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000).

A. Findings of the First Summary Judgment Order

7

Allegro first argues that the trial court erroneously granted the Seller's motion for summary judgment because it ignored its prior ruling that the Seller breached the ROFR. Again, as an initial point, we find that Allegro waived this sub-issue, as it fails to supply any law or analysis to support its point.

Regardless, its argument fails. Allegro refers to the initial summary judgment ruling entered by a predecessor judge: "Because the Court finds the ROFR was anticipatorily breached, the Court need not reach Seller's argument that the Olson Agreement was delivered in accordance with the ROFR during discovery." It argues that the previous finding conflicts with the successor judge's findings in the order on appeal that the Seller fully complied with his obligations under the ROFR and that Allegro failed to timely exercise its rights.

The issue before us is a trial court's ability to revisit the findings regarding anticipatory breach and mootness of the delivery issue. We have previously explained:

> As a matter of "comity and courtesy," a judge should hesitate to undo the work of another judge who presided earlier in the case. *Tingle v. Dade County Bd. of County Comm'rs,* 245 So. 2d 76, 78 (Fla. 1971). However, prior to final judgment, a successor judge has the power to vacate or modify a predecessor's interlocutory rulings, such as an order on a motion for summary judgment. *See . . . Collier v. Dade County,* 417 So. 2d 695, 696 n.1 (Fla. 3d DCA 1982) (rejecting appellant's argument that successor judge was precluded from revisiting predecessor's denial of summary judgment).

*Hull & Co., Inc. v. Thomas,* 834 So. 2d 904, 906 (Fla. 4th DCA 2003).

Accordingly, the successor judge did not err in entering its rulings merely because the issues were decided differently by the predecessor judge.

Nor is there a "law of the case" problem. "The doctrine of the law of the case requires that questions of law actually decided on appeal must govern the case in the same court and the trial court, through all subsequent stages of the proceedings." *Fla. Dep't of Transp. v. Juliano,* 801 So. 2d 101, 105-06 (Fla. 2001).

In the first appeal, this court noted that "[t]he order granting Allegro's motion for summary judgment established only that the Seller breached

the parties' agreement." *Allegro*, 227 So. 3d at 1289 n.1. However, that order was not challenged on appeal. Accordingly, whether the trial court properly found that the Seller breached the parties' agreement was not a "question[] of law actually decided" in the first appeal.

Consequently, the successor judge did not err by "ignoring" this finding and declining to find that the Seller breached the ROFR.

B. Florida Law on Delivery

Allegro next argues that the Seller's cross motion for summary judgment was erroneously granted because it runs afoul of Florida law on delivery requiring the grantor's intent, citing *Parramore v. Parramore*, 371 So. 2d 123 (Fla. 1st DCA 1978):

> As is stated in Smith v. Owens, 91 Fla. 995, 1001-02, 108 So. 891, 893 (1926), the critical issue respecting delivery is whether the grantor's intent and action released or reserved the locus poenitentiae, the opportunity to change his mind:

>> Actual manual delivery and change of possession are not always required in order to constitute an effectual delivery. The intention of the grantor is the determining factor. . . . In the well-considered case of Gulf Red Cedar Co. v. Crenshaw, 169 Ala. 606, 53 So. 812, the following propositions are announced: No formality or particular words or acts are essential to the delivery of a deed; delivery being a matter of intention, which may be manifested by acts and declarations, and may consist of a transfer of the conveyance without spoken words, or by spoken words without manual act. . . . The test of delivery of a conveyance is whether the grantor intended to reserve to himself the locus poenitentiae, and, if he did, there is no delivery; but if he parts with the control of the deed, or evinces an intention to do so, and to pass it to the grantee, though he may retain the custody or turn it over to another, or place it upon record, the delivery is complete.

*Id.* at 124-25.

Citing Parramore's explanation of *locus poenitentiae*, Allegro contends that the Seller did not deliver the Olson Contract because he "had no intention of 'delivering' the Olson Contract" when he produced it during litigation.

However, as the Seller points out, the cases on which Allegro relies are distinguishable from the case at hand because they pertain to deeds, real property, and negotiable instruments. *See City Nat'l Bank of Miami, N. A. v. Wernick*, 368 So. 2d 934, 936 (Fla. 3d DCA 1979) (finding that check was not delivered and noting that "delivery is essential to the existence of the instrument as a legal obligation"); *Parramore*, 371 So. 2d at 124 ("Delivery is 'the life of a deed'; without it no deed is good . . . ."); *Smith v. Owens*, 108 So. 891, 893 (1926) ("The test of delivery of a conveyance is whether the grantor intended to reserve to himself the locus poenitentiae, and, if he did, there is no delivery . . . .").

Regardless of these distinctions, Allegro's *locus poenitentiae* theory is not compelling. Because the Olson Contract is not a deed or a negotiable instrument or other document with indicia of ownership, had the Seller delivered the Olson Contract upon Allegro's first demand, he would not have relinquished control of the property. Rather, he could have just as easily refused to contract for the sale with Allegro. We decline to extend the requirement of *locus poenitentiae* to delivery of a mere contract.

Allegro offers us no alternative theory on which we can or should reverse the trial court's finding that the Olson Contract was delivered within the meaning of the terms of the ROFR, so we must affirm with respect to this argument. *See Congress Park*, 105 So. 3d at 610 ("[T]he duty rests upon the appealing party to make error clearly appear." (quoting *Lynn*, 81 So. 2d at 513)).

C. Relief of Performance Upon Breach

Allegro finally argues that it was relieved from performing because of the Seller's anticipatory repudiation. This argument, too, must fail.

> [T]he anticipatory b[r]each of a contract by one party may excuse the other party from performing a condition precedent to that contract. An anticipatory breach of contract occurs before the time has come when there is a present duty to perform as the result of words or acts evincing an intention to refuse performance in the future.

*Alvarez v. Rendon*, 953 So. 2d 702, 709 (Fla. 5th DCA 2007). "Under the

doctrine of futility, a party may be excused from performing a condition precedent to enforcement of the contract, if performance of the condition would be futile." *Id.* at 708-09.

The Seller's July 2015 letter refusing to deliver the Olson Contract would seem to fit the bill of an anticipatory breach. However, the general rule is that the doctrine of anticipatory breach does not apply to a unilateral contract. *See Haelterman v. Haelterman*, 846 So. 2d 1229, 1230 (Fla. 2d DCA 2003); *see also Poinciana Hotel of Miami Beach, Inc. v. Kasden*, 370 So. 2d 399, 402 (Fla. 3d DCA 1979) (Schwartz, J., dissenting) ("[T]he general, in fact well-nigh universal, rule [is] that there may be no such 'anticipatory breach' of a strictly unilateral obligation such as one merely to pay money in installments under a promissory note, including one secured by a mortgage.").

This court established in the first appeal that, once Olson and the Seller entered into the Olson Contract, the ROFR was converted into an option: "Here, once the Seller entered into the purchase agreement with the Buyer, Allegro's right of first refusal was converted into an irrevocable option to purchase." *Allegro*, 227 So. 3d at 1291. "An option contract is 'a unilateral contract which gives the option holder the right to purchase under the terms and conditions of the option agreement.'" *Old Port Cove Holdings, Inc. v. Old Port Cove Condo. Ass'n One, Inc.*, 986 So. 2d 1279, 1285 (Fla. 2008) (quoting *S. Inv. Corp. v. Norton*, 57 So. 2d 1, 2 (Fla. 1952)). In the context of an option to purchase property, it is not until the option holder manifests to the owner a desire to purchase the property that a bilateral contract exists. *Doolittle v. Fruehauf Corp.*, 332 So. 2d 107, 109 (Fla. 1st DCA 1976) (holding that at the time the optionee-tenant unequivocally communicated his decision to exercise his option to purchase a property, "the option became a bilateral contract, binding on both parties, and susceptible of enforcement by a court of equity in a suit for specific performance").

As established in the first appeal, after the Seller and Olson entered into the Olson contract, Allegro then held an option, a unilateral contract. Because Allegro failed to manifest its intent to purchase the property, the option was not converted into a bilateral contract. As a consequence, the doctrine of anticipatory repudiation does not apply and as such, Allegro's performance was not excused.

Allegro has not supplied any authority or analysis to demonstrate that the general rule should not apply here. Accordingly, Allegro has not met its burden on appeal of demonstrating error.

We are inclined to agree with the dissent's conclusion that "[t]he production of the contract through a demand for discovery in a lawsuit, in which the producer has denied the existence of an obligation to turn over the contract, can hardly be a 'delivery' within the contemplation of the contract, because it is not voluntary." Problematically, however, that argument was not presented in Allegro's initial brief. Allegro conclusively asserts in its brief that "mere provision of a copy as a part of discovery did not and could not constitute 'delivery' of the Olson Contact under the ROFR or Florida law." But it did not provide the voluntariness analysis that is set forth in the dissent, and we decline to reverse based on an argument that was not properly briefed. *See Polyglycoat Corp.*, 442 So. 2d at 960 ("This Court will not depart from its dispassionate role and become an advocate by second guessing counsel and advancing for him theories and defenses which counsel either intentionally or unintentionally has chosen not to mention.").

## III.  CONCLUSION

Finding no error with respect to the arguments raised, we affirm the final judgment of the trial court.

*Affirmed.*

SINGHAL, RAAG, Associate Judge, concurs.
WARNER, J., dissents with opinion.

WARNER, J., dissenting.

I dissent. The trial court and the majority conclude that the Seller "delivered" the sales contract to Allegro in compliance with the Right of First Refusal (ROFR) by producing it in a response to a demand for discovery and attaching it to a motion filed by an intervenor. I conclude that as a matter of law these facts cannot constitute delivery. Other facts show that the Seller affirmatively negated the "delivery" of the contract through the request for production. Moreover, the Seller breached the contract earlier by refusing to deliver the Olson Contract to Allegro and declaring the agreement terminated and counterclaimed to declare the ROFR terminated. Therefore, Allegro had no duty to perform an already breached contract.

Because the majority leaves out some salient facts, I restate the essential facts in this case. As part of the agreement to purchase other property, the Seller agreed to give Allegro's predecessor in title a right of first refusal on additional land owned by the Seller. The parties agreed

12

through a recorded instrument that Allegro would be entitled to a right of first refusal as to any contract to purchase the property. That right required the Seller to deliver a copy of any third party sales contract which the Seller intended to accept. As noted in the majority opinion:

> prior to the Seller's transfer of the real property (the "Refusal Property"), the Seller shall deliver a copy of the third party sale contract to Allegro. Allegro "shall have the right to elect, within ten (10) days after its receipt of the [third party sale contract], to purchase the Refusal Property at the same price and upon the same terms and conditions as those contained in the [third party sale contract] by giving written notice to Seller within the ten (10) day period."

Thus, the Seller had a contractual obligation to "deliver" the sales contract to Allegro. The Seller entered into one contract for sale of the property, and Allegro exercised its right and entered into a contract with the Seller, only to withdraw from that contract later. When Allegro discovered that the Seller had entered into another contract for sale of the property (the Olsen contract), Allegro requested a copy of the contract in accordance with the right of first refusal, but the Seller refused, contending that because of Allegro's failure to close on the prior contract, the ROFR had terminated.

Allegro filed suit against the Seller alleging counts for breach of contract, declaratory judgment, and specific performance. The Seller answered alleging as affirmative defenses that Allegro had breached the contract by its bad faith in failing to close on the prior contract of sale and that as a result the ROFR terminated.[1] The Seller also filed a counterclaim demanding declaratory judgment that the ROFR was terminated and of no further force and effect, as well as a claim for slander of title. A copy of the Olsen contract **was not** attached to the counterclaim. Allegro moved to strike many of the Seller's affirmative defenses.

After filing suit, Allegro filed a request for production on the Seller in which it demanded copies of all contracts signed after January 1, 2013, on the property which was the subject of the ROFR. The Seller responded, as follows:

---

[1] The only issue raised in this appeal is whether the Seller complied with the ROFR by "delivery" of the Olsen contract to Allegro. Thus, whether the ROFR terminated is not an issue in this appeal.

13

Documents responsive to this request will be made available for inspection and copying at the office of the undersigned at a mutually agreeable date and time. By producing these documents, [Seller] is not waiving, and expressly reserves, his right to assert that the subject ROFR has been terminated either by Allegro's previous exercise of it and then failing to close thereunder, or its exercise of it in bad faith, or both. **While [Seller] maintains the ROFR is no longer in force or effect, Allegro no longer possesses any rights thereunder, and he is not obligated to provide Allegro with a copy of any contract for the sale of the subject property, he also understands the breadth and scope of permissible discovery in Florida and is therefore producing the requested documents for that sole reason, as set forth herein.**

(Emphasis modified.)[2]

Three months later Olsen, the third-party Buyer, filed a motion to intervene. He alleged a direct interest in the outcome of the proceedings and attached a copy of the Olsen contract to his motion. Twelve days after the motion to intervene was filed, the court granted Allegro's motion to strike and allowed the Seller to amend his answer, affirmative defenses, and counterclaim.

Three days after the order granting the motion to strike, the Seller's attorney sent documents to Allegro pursuant to the request for production. These were accompanied by an email in which the attorney stated:

reviewing this file, it appears my office may have never produced the defendant's documents in response to the plaintiff's first request for production. To that end, attached is another copy of the defendant's written response (filed10/06/15), along with his documents referenced in paragraph 1 thereof, bates-stamped [SELLER] 000001-000034. Should you have any questions, feel free to contact me.

Included in the documents produced was a copy of the Olson Contract.

---

[2] The response to the request for production was attached to the affidavit of Scott Simon, Esq. filed March 23, 2016, and relied on by the Seller in his motion for summary judgment.

The Seller then filed amended affirmative defenses and a counterclaim in which he alleged, as he had in the prior answer, that the ROFR had terminated. But in the amended answer and counterclaim the Seller alleged that he "provided" Allegro with a copy of the contract, and Allegro failed to exercise the ROFR. The Seller claimed that Allegro had received a copy of the Olson Contract when Olson attached it to his motion to intervene. The Seller claimed that Allegro received another copy of it three days after the court granted the motion to strike, when the Seller's attorney responded to the request for production by including the contract in the documents produced. Allegro filed an answer denying the same and alleging as an affirmative defense that the contract was not legally delivered within the meaning of the contract and that the Seller anticipatorily breached the contract by refusing to perform under the ROFR.

The parties each filed motions for summary judgment. The trial court granted the Seller's motion. In its order granting summary judgment, the trial court found that the Seller had:

> satisfied the delivery requirement under the ROFR by providing Allegro with a copy of the Olson Contract, both as part of its document production and as an exhibit to its operative pleading.

> The fact that [Seller] delivered the Olson Contract to Allegro during the course of litigation is immaterial, so long as Allegro received it, which it did.

The court found that to do otherwise would rewrite the contract between the parties. Because Allegro failed to exercise its right to purchase after receiving a copy of the contract in discovery, the court concluded that the Seller had fully complied with the ROFR, entitling the Seller to summary judgment. Allegro then appealed.

We review a final summary judgment based upon a de novo standard. As explained in *Fini v. Glascoe,* 936 So. 2d 52, 54 (Fla. 4th DCA 2006).

> The standard of review of an order granting summary judgment is de novo. *Volusia County v. Aberdeen at Ormond Beach, L.P.,* 760 So. 2d 126, 130 (Fla.2000). When reviewing a ruling on summary judgment, an appellate court must examine the record in the light most favorable to the non-moving party. *Weinstein Design Group, Inc. v. Fielder*, 884 So. 2d 990, 997 (Fla. 4th DCA 2004). Summary judgment cannot

15

be granted unless the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, conclusively show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fla. R. Civ. P. 1.510(c). "[T]he burden is upon the party moving for summary judgment to show conclusively the complete absence of any genuine issue of material fact." *Albelo v. S. Bell*, 682 So. 2d 1126, 1129 (Fla. 4th DCA 1996).

That means that the appellate court itself reviews the records to determine whether the party moving for summary judgment has shown that there is no genuine issue of material fact and is entitled to summary judgment. Here, the affidavits and pleadings do not show that the Seller was entitled to summary judgment on the grounds asserted by the Seller.

The trial court erred in concluding that delivery occurred within the meaning of the ROFR. The contract provided that the **Seller shall deliver a copy of the contract** to Allegro. "Delivery" is defined as "[t]he formal act of *voluntarily transferring something*; esp., the act of bringing goods, letters, etc. to a particular person or place." *Black's Law Dictionary* (11th ed. 2019) (emphasis added). Statutory definitions bear out the voluntariness element. For instance, under the Uniform Commercial Code, "delivery" is the "voluntary transfer of possession." § 671.201(15), Fla. Stat. (2018). The production of the contract through a demand for discovery in a lawsuit, in which the producer has denied the existence of an obligation to turn over the contract, can hardly be a "delivery" within the contemplation of the contract, because it is not voluntary. Furthermore, in this case, the production was accompanied by specific language that the documents were furnished for the sole purpose of fulfilling its obligation to comply with the production demand. Thus, the contract was produced by the Seller with the express reservation that would preclude Allegro from exercising its rights. No "delivery" within the meaning of the contract occurred.

Further, the court factually erred in determining that the Seller provided the contract by attaching it to the counterclaim, because the Seller did not allege he delivered the contract by attaching to the counterclaim. Instead, the Seller alleged that the contract was "received" through its attachment to Olson's motion to intervene and through his response to the request for the production of documents. Olsen's motion cannot constitute "delivery" pursuant to the contract, because the contract

16

provides that the **Seller** deliver the contract, not a third person.[3]  The trial court would be rewriting the contract to find that the contract may be provided by any third party and still trigger the time period during which Allegro must exercise its right to purchase with the Seller.

The court wrongly focused on Allegro's receipt of the contract, rather than the Seller's delivery.  The means by which Allegro received the contract *is* material, because if it is not a voluntary transfer for the intention of fulfilling the requirement of the ROFR, the time for Allegro's acceptance of the contract does not start to run.  The Seller never delivered the contract for the purpose of fulfilling the ROFR.  When his attorney provided the document in discovery, the response expressly noted that it was *solely* for the purpose of complying with its obligations under the Florida Rules of Civil Procedure.  The Seller had also filed a counterclaim seeking to declare the RORF terminated.  He had no intent of providing Allegro with any opportunity to exercise its rights pursuant to the RORF.

Even without the language limiting the production of the contract through discovery, I would find as a matter of law that required production of a document in response to a request for production could never satisfy "delivery" under any contractual provision, because it is not a voluntary production.  The majority's conclusion that "delivery" can occur in the middle of a lawsuit simply by production of a contested contract in discovery or attachment to a counterclaim which alleges that the contract is of no further effect, creates a dangerous precedent for all litigants.  What the majority opinion requires is that once the document is produced in litigation, a party must tender performance under the contract, even where that act would be futile based upon the very contentions of the lawsuit.  Quite simply, this notion is untenable.

Despite the obligation to review the record de novo, the majority does not perform its obligation to determine whether there is a genuine issue of material fact as to delivery.  Instead, they argue that the issue I address in my dissent was not raised in the briefs.  While the briefs may not have used the word "voluntary," there is no question that the issue was raised.  In the Summary of Argument, Allegro argued that the court erred in finding that the contract had been delivered by production of documents or attachment to the complaint and further that this was contrary to Florida law on delivery.  In the argument section, the brief states "Allegro

---

[3] This point was raised in Allegro's memorandum in opposition to the Seller's original motion for summary judgment, which was denied.  The memorandum was also included in the appendix filed with Allegro's initial brief and mentioned in the brief.

received the Olson Contract only in this manner, not as a delivery as required by the express terms of the ROFR." It also argued extensively that Pearson had no intent to deliver the contract. In the reply brief Allegro distinguished *Vorpe v. Key Island, Inc.*, 374 So. 2d 1035 (Fla. 2d DCA 1979), cited by Pearson, noting "The *Vorpe* court did not opine that presentation of a copy of a contract in the course of the discovery process constitutes 'delivery' or serves to obviate a prior repudiation by a contracting party." It later argued in its reply:

> Receipt of the Olson Contract <u>after</u> filing Allegro's filing of its action for anticipatory breach does not constitute "delivery". Both (i) Pearson's "attachment" of the Olson Contract to his Answer, and (ii) Pearson's including the Olson Contract in his Discovery Response, occurred <u>in the course</u> of this litigation, and <u>after</u> Allegro was forced to declare a complete breach by Pearson under the terms of the ROFO and file suit to protect its interests. [Citations omitted] Thus, Pearson did not "deliver" the Olson Contract in accordance with, or for purposes of, the ROFR. Rather, Pearson was required by Rules 1.130 and 1.351, Florida Rules of Civil Procedure, to provide documents on which actions are brought or defenses made, and in responsive to Allegro's Request for Production, all <u>after</u> Allegro was forced to treat the contract as entirely broken by Pearson, and had to sue.

This is more than sufficient to raise the issue that the production of documents in the litigation could not constitute delivery. And it mirrors the very argument I have made in this dissent. The use of the word "voluntary" is not needed to make the point. I could have left out the definition of "delivery" as requiring a voluntary act, and the substance of the argument comports with what has been raised by Allegro in its brief. It did raise the issue, and the majority simply creates bad law by holding that a delivery occurred.

Because I would reverse based upon the court's error in determining that the contract was delivered to Allegro, the issue of anticipatory breach need not be addressed. Even so, reliance on the doctrine is not necessary. As the doctrine is explained in *Haelterman v. Haelterman*, 846 So. 2d 1229, 1230 (Fla. 2d DCA 2003), "If a party to a contract repudiates a duty *before he has actually breached the contract* and before he has received all of the agreed exchange for it, he has committed an anticipatory breach that gives rise to a claim for damages." (Emphasis added.) Here, the Seller had actually breached his duty under the right of first refusal when he agreed to sell the property to Olsen but refused to deliver the contract to Allegro

for its exercise of its option. "If one party to an agreement has breached the agreement, the other party's failure to continue with the agreement is not considered a default of the contract." *Jones v. Warmack*, 967 So. 2d 400, 402 (Fla. 1st DCA 2007). Because the Seller had breached, Allegro filed suit for breach of contract, specific performance, and declaratory judgment. Even if the Seller had delivered the contract to Allegro during the litigation within the meaning of the contractual provision, Allegro's failure to exercise its right of first refusal cannot be considered a default under the contract because the Seller was already in breach.

Finally, on the issue of whether Allegro was entitled to specific performance, I do not fault its brief, as the majority does. It succinctly stated the elements of specific performance and how Allegro had met each one of them. Allegro was not entitled to summary judgment, however, because it did not negate all of the affirmative defenses of the Seller.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***